[No. 73301-5.   En Banc.]
Argued October 21, 2003.   Decided February 12, 2004.

THE STATE OF WASHINGTON, *Respondent*, v. MARTIN KILBURN, *Petitioner*.

*Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Dennis J. Mc-Curdy* and *Randi J. Austell, Deputies,* for respondent.

*Leigh Noffsinger,* on behalf of American Civil Liberties Union of Washington, amicus curiae.

MADSEN, J. — Petitioner Martin Kilburn (Kilburn) claims that his juvenile conviction of felony harassment under RCW 9A.46.020 must be reversed because the State failed to prove that he actually intended to carry out the alleged threat made to a classmate and because his statements were intended only as a joke. We hold that proof that the speaker intended to carry out his or her threat is not required by either the First Amendment or the harassment statute. However, we agree with Kilburn that the evidence is insufficient to sustain his conviction.

## Facts[1]

On March 21, 2001, at Mount Baker Middle School in King County, eighth grade student K.J. was sitting next to Kilburn at the end of their last class, an accelerated reading class. Kilburn said to K.J., "I'm going to bring a gun to school tomorrow and shoot everyone and start with you," and then he said, "maybe not you first." Finding of Fact 3, Clerk's Papers (CP) at 16. K.J. was surprised and said, "yeah right" and turned away. Finding of Fact 3, CP at 16.

K.J. immediately told a friend about Kilburn's statement but did not tell her teacher because she did not know what to do. She thought Kilburn might have been joking, but she was not sure. K.J. went home and continued to think all that afternoon and into the evening about what Kilburn had said, and the more she thought about it the more she became afraid that Kilburn was serious.

K.J. did not know Kilburn to be a mean or scary person. He had never done anything like this before. K.J. had no reason to think that Kilburn would make a threat of this kind, but she testified that "we all knew we weren't sup-pose[d] to say things like that so the fact that he said it made me think he was serious." Finding of Fact 8, CP at 17. Kilburn, on the other hand, stated in a written statement admitted at his trial that he had said that "[t]here's nothing an AK 47 wouldn't solve" and stated this was only a joke. CP at 21.

Eventually that evening K.J. told her mother and father what Kilburn had said, and her mother called 911. K.J. testified that she felt that "if he wasn't joking [she] saved lives." Finding of Fact 9, CP at 17. Kilburn was arrested and charged with felony harassment, which requires the State to prove that Kilburn knowingly threatened to cause bodily injury to K.J. immediately or in the future, the

---

[1] The findings of fact are unchallenged and the trial judge formally incorporated her oral decision into the findings and conclusions. A trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law and judgment. *State v. Michielli*, 132 Wn.2d 229, 242, 937 P.2d 587 (1997); *United States v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966).

threat being one to kill, and by words or conduct placed K.J. in reasonable fear that the threat would be carried out. RCW 9A.46.020.

The trial court found K.J.'s testimony credible and that K.J. reasonably feared that Kilburn would carry out the threat. The trial court adjudicated Kilburn guilty of felony harassment, involving a threat to kill, and entered written findings and conclusions. During its oral ruling, the court rejected Kilburn's argument that the State had to prove that he actually intended to carry out the threat. In the course of addressing this matter, the court also said that

> in retrospect and in analyzing the Respondent, both in terms of, you know, what [K.J.] said about him and any other limited knowledge I have, there is no reason to believe that he in fact intended to bring a gun to school and shoot everybody. But the cases say, and the law says, that that is not relevant; that we are simply talking about whether there is a threat and whether that threat is communicated.

Report of Proceedings (RP) at 119.

At Kilburn's disposition hearing, the court imposed no sanction of confinement, supervision, or community service. The deputy prosecutor stated that just before trial the State offered a deferred disposition, but the offer was rejected. Following trial, the deputy prosecutor again suggested a deferred disposition, but the court advised that a deferred prosecution cannot be imposed after adjudication. The court commented that Kilburn "has now got a felony; there is nothing I can do about it. This should have been resolved in some other way prior to trial, and it's just—it's a tragedy that it wasn't." RP at 136. The only penalty imposed was a $100.00 victim penalty assessment.

Kilburn appealed, arguing that for a conviction under RCW 9A.46.020 to satisfy First Amendment requirements, the State must prove that the speaker actually intended to carry out the threat. In his case, he argued, he was joking. He also complained that his threat to "shoot everyone" could not reasonably be perceived to be a threat to kill. The

Court of Appeals affirmed in an unpublished opinion. *State v. M.K.*, noted at 114 Wn. App. 1006 (2002). This court granted Kilburn's petition for discretionary review.

## Discussion

## I

Kilburn maintains that unless the State shows that he intended to actually carry out his threat, it was not a true threat. Under the First Amendment only a true threat suffices for a conviction under RCW 9A.46.020. Thus, he argues, his conviction must be overturned because he was only joking when he made his statements about shooting everyone at the school.

RCW 9A.46.020[2] provides in relevant part:

(1) A person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:

(i) To cause bodily injury immediately or in the future to the person threatened or to any other person . . . [and]

. . . .

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. . . .

(2) A person who harasses another . . . is guilty of a class C felony if . . . (b) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened . . . .

■ The statute criminalizes pure speech. Therefore, it " 'must be interpreted with the commands of the First Amendment clearly in mind.' " *State v. Williams*, 144 Wn.2d 197, 206-07, 26 P.3d 890 (2001) (quoting *Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969)). "The First Amendment presupposes that the free-

---

[2] The subsectioning of the statute was changed by amendment in 2003, but the substantive provisions remain the same. LAWS OF 2003, ch. 53, § 69 (effective July 1, 2004).

dom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for the truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 503-04, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984). While laws may proscribe "all sorts of conduct" the same is not true of speech; the law "is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group*, 515 U.S. 557, 579, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995). " 'However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.' " *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)). Thus, for example, in *Brandenburg v. Ohio*, 395 U.S. 444, 447-48, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969), the United States Supreme Court held that " 'the mere abstract teaching' " of " 'the moral propriety or even moral necessity for a resort to force and violence' " is protected by the First Amendment unless the speech is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* (quoting *Noto v. United States*, 367 U.S. 290, 297-98, 81 S. Ct. 1517, 6 L. Ed. 2d 836 (1961)).

In order to preserve the vital right to free speech, it is imperative that a court carefully assess statements at issue to determine whether they fall within or without the protection of the First Amendment. It is, at this point, settled that certain kinds of speech are unprotected. The Court has noted that

> there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

*Bose*, 466 U.S. at 504 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)). Among these categories are libelous speech, fighting words, incitement to riot, obscenity, and child pornography. *Id.*

■■■■■ An additional category is at issue here—"true threats," which are also unprotected speech under the First Amendment. *See Watts*, 394 U.S. at 707; *see also, e.g., United States v. Fulmer*, 108 F.3d 1486, 1492-93 (1st Cir. 1997); *John Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002); *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1074 (9th Cir. 2002) (*Planned Parenthood*); *Williams*, 144 Wn.2d at 207; *State v. J.M.*, 144 Wn.2d 472, 477, 28 P.3d 720 (2001). To avoid unconstitutional infringement of protected speech, RCW 9A.46.020(1)(a)(i) must be read as clearly prohibiting only "true threats." *Williams*, 144 Wn.2d at 208; *J.M.*, 144 Wn.2d at 478.

The reason that "true threats" are not protected speech is because there is an overriding governmental interest in the " 'protect[ion of] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.' " *J.M.*, 144 Wn.2d at 478 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)). We have adopted an objective test of what constitutes a "true threat": A "true threat" is " 'a statement made in a "context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life" ' " of another person. *Williams*, 144 Wn.2d at 208-09 (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998) (quoting *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir. 1990))); *accord J.M.*, 144 Wn.2d at 477-78. A true threat is a serious threat, not one said in jest, idle talk, or political argument. *United States v. Howell*, 719 F.2d 1258, 1260 (5th Cir. 1983); *J.M.*, 144 Wn.2d at 478; *State v. Hansen*, 122 Wn.2d 712, 717 n.2, 862 P.2d 117

(1993). Under this standard, whether a true threat has been made is determined under an objective standard that focuses on the speaker.

Kilburn argues that this court should abandon the test adopted in *Williams* and *J.M.* and instead hold that a statement is not a true threat unless the speaker has the actual intent to cause injury. He reasons that there are two definitions of "true threat" that have emerged from case law: the objective speaker test this court adopted, and a second, which he describes as a subjective definition focusing on the intent of the speaker. For the latter, he relies on dissents. First, he urges the dissent in the lower court decision in *Watts*, where Judge Wright maintained that protection of free speech required a specific intent to carry out the threat against the president at issue in *Watts*. *Watts v. United States*, 402 F.2d 676, 691 (D.C. Cir. 1968) (Wright, J., dissenting). Kilburn points out, correctly, that when deciding *Watts*, the United States Supreme Court expressed doubts about interpreting the "willfulness" requirement in the statute criminalizing threats against the president without a requirement of specific intent to carry out the threat, pointing to Judge Wright's dissent. *Watts*, 394 U.S. at 707-08. The Court did not reach the question, because it had already held that the statement constituting the alleged threat did not constitute a true threat.

Kilburn also relies on dissents in *Planned Parenthood*. Neither dissent supports his position. Judge Kozinski in fact wrote "[n]or is there a dispute that someone may be punished for uttering threats, even though he has no intent to carry them out . . . ." *Planned Parenthood*, 290 F.3d at 1089 n.1 (Kozinski, J., dissenting). Judge Berzon specifically noted the majority's conclusion in *Planned Parenthood* that the dissents maintained that the speaker must actually *intend* to carry out the threat, and responded that neither dissent did so. *Planned Parenthood*, 290 F.3d at 1107 n.8 (Berzon, J., dissenting).

Although not cited by Kilburn, one Fourth Circuit case held that where a threat was directed at the president but

not communicated directly to him, proof of specific intent to threaten *and* the present intention to carry out the threat were required. *United States v. Patillo*, 438 F.2d 13 (4th Cir. 1971). The case has not been recently followed, however.

There is thus very little support for Kilburn's position, and it really cannot be fairly said, as he urges, that there is a second line of cases representing his view that a true threat may be found only where there is an actual intent to carry out the threat.[3]

Despite the doubt expressed in *Watts*, the federal courts have overwhelmingly concluded that the First Amendment does not require that the speaker intend to actually carry out the threat. *E.g.*, *United States v. Fulmer*, 108 F.3d 1486, 1494 (1st Cir. 1997) (citing *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 n.3 (9th Cir. 1990)); *United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999); *United States v. Roberts*, 915 F.2d 889, 890 (4th Cir. 1990); *United States v. Daughenbaugh*, 49 F.3d 171, 173 n.2 (5th Cir. 1995); *United States v. Rogers*, 488 F.2d 512 (5th Cir. 1974), *rev'd on other grounds*, 422 U.S. 35, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975); *United States v. Miller*, 115 F.3d 361, 363-64 (6th Cir. 1997); *United States v. Aman*, 31 F.3d 550, 553-56 (7th Cir. 1994); *Khorrami*, 895 F.2d at 1192-93; *United States v. Patrick*, 117 F.3d 375, 377 (8th Cir. 1997); *Planned Parenthood*, 290 F.3d at 1075-76; *United States v. Martin*, 163 F.3d 1212, 1215-16 (10th Cir. 1998).

---

[3] There are, roughly speaking, two lines of cases, but both involve objective tests, the difference being that the second focuses on the reasonable listener. That is, the question is whether, in light of the entire context, the listener could reasonably conclude that the statement expresses the intent to injure presently or in the future. *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996); *see also*, *e.g.*, *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990) (as noted, *Patillo*, mentioned above, is not generally followed even in the Fourth Circuit); *United States v. Daughenbaugh*, 49 F.3d 171, 173-74 (5th Cir. 1995); *United States v. J.H.H.*, 22 F.3d 821, 827-28 (8th Cir. 1994).

One of these courts has reasoned that the difference between the two tests is largely insignificant. The Eighth Circuit explained in *Doe*, 306 F.3d at 623, that in the vast majority of the cases the outcome should be the same because a reasonably foreseeable response from the listener and an actual reasonable response should be the same. The court foresaw that the only case where there might be a different outcome is where the recipient suffers from some unique sensitivity unknown to the speaker. *Id.*

■ This conclusion accords with the reasons why true threats are not protected speech. The fear of harm aroused in the person threatened and the disruption that may occur as a result of that fear are some of the reasons why true threats are not protected speech. *R.A.V.*, 505 U.S. at 387-88. That fear does not depend upon whether the speaker in fact intends to carry out the threat. For this reason, we hold, along with the vast majority of courts, that the First Amendment does not require that the speaker intend to carry out a threat for it to constitute a true threat.

Kilburn argues, however, that this court has held there must be an actual intent to carry out the threat. He is mistaken. He cites to *Williams*, 144 Wn.2d at 208, but the court there simply quoted the test for "true threat," which, as noted above, is one that a reasonable person would foresee would be interpreted " 'as a serious expression of intention to inflict bodily harm . . . .' " *Id.* (quoting *Knowles*, 91 Wn. App. at 373). The requirement is that the words express the intent to inflict harm, not a requirement that the speaker actually intends to carry out the threat. Kilburn also cites *J.M.*, 144 Wn.2d at 481-82. However, we expressly said in *J.M.* that the speaker need not intend to carry out the threat, and repeated the same point made in *Williams*—that the communication must be of intent to inflict bodily harm.

■ In *J.M.* we also said that the communication must be a serious threat, and not just idle talk, joking or puffery. Kilburn evidently takes this to mean that if the speaker subjectively intends a joke, no true threat is made. This is incorrect. As the State points out, the United States Supreme Court has observed that "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52, 39 S. Ct. 247, 63 L. Ed. 470 (1919). Whether a statement is a true threat or a joke is determined in light of the entire context, and the relevant question is whether a reasonable person in the defendant's place would foresee that in context the listener would interpret the statement as a serious threat or a joke.

Kilburn says that if a true threat is not limited by the actual subjective intent of the speaker to carry out the threat, then many threats against the president would be criminalized where the speaker lacks the present ability to carry out the threat. In fact, there are numerous cases holding that threats against the president may be unprotected true threats without regard to the subjective intent of the speaker. *E.g.*, *Howell*, 719 F.2d 1258; *United States v. Hoffman*, 806 F.2d 703 (7th Cir. 1986); *United States v. Hanna*, 293 F.3d 1080 (9th Cir. 2002); *Orozco-Santillan*, 903 F.2d 1262.

Kilburn claims that *Watts* and *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982) support his position that the speaker's intended purposes should be considered. However, in each case the Court found the comments at issue to constitute protected political speech, in light of the entire context.

Kilburn argues the State was not put to the proof of showing a compelling governmental interest justifying impairment of a constitutionally protected right. However, if the State establishes that a true threat was made, it has necessarily established the speech is unprotected, as *Watts*, *R.A.V.*, and state precedent hold.

■ Kilburn complains that if RCW 9A.46.020(1)(a)(i) is interpreted to allow a conviction based upon a statement made in jest it is unconstitutionally overbroad. He says the same is true of RCW 9A.04.110(25)(a) (defining threat as "to communicate, directly or indirectly the intent . . . [t]o cause bodily injury in the future to the person threatened or to any other person"). If a statute criminalizes a substantial amount of constitutionally protected speech, it is unconstitutionally overbroad even if it has some legitimate application. *Williams*, 144 Wn.2d at 208. However, the court has construed RCW 9A.46.020(1)(a)(i) as criminalizing only true threats, *Williams*, 144 Wn.2d at 208, *J.M.*, 144 Wn.2d 472, and pursuant to overwhelming authority it need not import a subjective intent element into the "true threat" definition or into the statute in order to save it from overbreadth.

We hold that the First Amendment does not require that the speaker actually intend to carry out the threat in order for a communication to constitute a true threat, and that the State need not prove such intent.

■ We add, however, that the harassment statute itself does require a mental element. The statute requires that the defendant "knowingly threatens . . . ." RCW 9A.46.020(1)(a). This means that "the defendant must subjectively know that he or she is communicating a threat, and must know that the communication he or she imparts directly or indirectly is a threat of intent to cause bodily injury to the person threatened or to another person." *J.M.*, 144 Wn.2d at 481. Thus, one who writes a threat in a personal diary or mutters a threat unaware that it might be heard does not knowingly threaten. *Id.* The statute does not require that the State prove that the speaker intended to actually carry out the threat.

## II

■ ■ Kilburn also argues that the evidence is insufficient to convict him of felony harassment. Because he argues that the State must prove that he actually intended to carry out a threat to inflict bodily injury, part of Kilburn's argument on sufficiency of the evidence is that such evidence is lacking. However, as we have explained, this is not a requirement either to show a "true threat" for First Amendment purposes or to satisfy the elements of RCW 9A.46.020. Instead, the relevant constitutional question under the circumstances here is whether there is sufficient evidence that a reasonable person in Kilburn's position would foresee that his comments would be interpreted as a serious statement of intent to inflict serious bodily injury or death. Kilburn claims that he was only joking.

This sufficiency of the evidence inquiry implicates core First Amendment protection, because it is the heart of the "true threat" inquiry. The issue therefore requires that we carefully determine and apply the correct standard of

review. As we have explained, RCW 9A.46.020's criminalization of threats is a proscription of pure speech. An appellate court must be exceedingly cautious when assessing whether a statement falls within the ambit of a true threat in order to avoid infringement on the precious right to free speech. It is not enough to engage in the usual process of assessing whether there is sufficient evidence in the record to support the trial court's findings. The First Amendment demands more.

In *Bose Corp.*, 466 U.S. 485, the United States Supreme Court examined the premise that there should be independent review of the record in First Amendment cases in the face of an argument that review should proceed under Federal Rule of Civil Procedure 52(a) (setting forth a clearly erroneous standard for findings of fact). The case was a defamation action brought by Bose contending that an evaluation in *Consumer Reports* had falsely stated that speakers produced sound that " 'wander[ed] about the room.' " *Id.* at 487-88.

The Court explained that before *Bose* it had independently reviewed the record in a number of First Amendment contexts, including cases where speech was claimed to be unprotected fighting words, incitement to riot, obscenity, child pornography, and defamation. *See Bose*, 466 U.S. at 499, 504-08. The Court has since applied the independent review analysis in other First Amendment contexts. *E.g.*, *Hurley*, 515 U.S. 557 (question whether Massachusetts could require private citizens organizing a parade to include a group imparting a message that the organizers did not want to communicate; Court had to examine validity of state courts' characterization of parade as lacking the element of expression); *City of Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (civil rights action challenging an ordinance that made it unlawful to oppose, molest, abuse, or interrupt a police officer in the execution of his duty).

The Court explained in *Bose* that in each of the First Amendment cases where independent review was undertaken the limits of the unprotected category as well as the

unprotected character of certain communications were determined by judicial evaluation of special facts. *Bose*, 466 U.S. at 504-05. The Court continued:

> In such cases, the Court has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure the protected expression will not be inhibited. . . . The principle of viewpoint neutrality that underlies the First Amendment itself also imposes a special responsibility on judges whenever it is claimed that a particular communication is unprotected.

*Bose*, 466 U.S. at 505 (footnote and citation omitted). The Court observed that it " 'must "make an independent examination of the whole record, . . . " so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Id*. at 508 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (quoting *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S. Ct. 680, 9 L. Ed. 2d 697 (1963))). The independent review rule is, the Court said, "a rule of federal constitutional law." *Bose*, 466 U.S. at 510.

The Court contemplated, however, a full review of only those facts in a record that relate to the First Amendment question whether certain expression was unprotected speech. For example, the Court indicated that findings on credibility would continue to be given deference. The Court said, however, that

> [a] finding of fact in some cases is inseparable from the principles through which it was deduced. At some point, the reasoning by which a fact is "found" crosses the line between application of those ordinary principles of logic and common experience which are ordinarily entrusted to the finder of fact into the realm of a legal rule upon which the reviewing court must exercise its own independent judgment.

*Bose*, 466 U.S. at 501 n.17. In later cases, the Court similarly explained that the rule of independent review generally requires the appellate court to freshly examine

"crucial facts"—those so intermingled with the legal question as to make it necessary, in order to pass on the constitutional question, to analyze the facts. *See, e.g., Hurley,* 515 U.S. at 567; *Hernandez v. New York,* 500 U.S. 352, 367, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991); *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688-89, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989). Also, the appellate court may review evidence ignored by a lower court in deciding the constitutional question. *Hill,* 482 U.S. at 458 n.6.

This court has read *Bose* (and *New York Times*) as imposing a mandatory rule of independent review in defamation cases, *Richmond v. Thompson,* 130 Wn.2d 368, 388, 922 P.2d 1343 (1996), but we have not previously considered whether the rule is limited to this context. We note that a few courts have limited the rule to defamation cases. This limiting appears to us incorrect, both because *Bose* also cites First Amendment cases where independent review involved fighting words, incitement to riot, obscenity, and child pornography, and because the Court since *Bose* has applied this review standard in other First Amendment contexts. There are also differences among courts as to how extensive the review of the record should be—a number of state courts recite the rule as one of complete de novo review. However, *Bose* and later cases direct that review is of critical facts necessary to the legal determination of whether the speech is unprotected, not complete de novo review. Finally, there have at times been indications that the rule simply accords with rules governing federal review of facts found in state courts. *E.g., Hurley,* 515 U.S. at 567 (quoting *Fiske v. Kansas,* 274 U.S. 380, 385-86, 47 S. Ct. 655, 71 L. Ed. 1108 (1927)). However, *Bose* is not limited to federal review of state court decisions—the case itself originated in federal district court. Further, the rationale offered for independent review, and the Court's reference to it as a "rule of federal constitutional law" indicate it is not so limited. Also, in explaining the rule, the court in *Bose* did not analyze any standards or provisions having to do with federal review of state court decisions.

We therefore conclude that the rule of independent review is not limited to defamation cases, but under the First Amendment should apply whenever an inquiry must be made into the factual context to decide if speech is unprotected. However, this review is limited to review of those "crucial" facts that necessarily involve the legal determination whether the speech is unprotected.

Here, we apply the rule of independent review because the sufficiency of the evidence question raised involves the essential First Amendment question—whether Kilburn's statements constituted a "true threat" and therefore unprotected speech. We must independently review the crucial facts in the record, i.e., those which bear on the constitutional question.

As noted, Kilburn maintains he was joking. Some of K.J.'s uncontroverted testimony that did not find its way into the trial court's findings bears this out. Importantly, the trial court found K.J.'s testimony to be credible, a finding this court must defer to. Conclusion of Law 6, CP at 18 (incorrectly denominated a conclusion of law). K.J. testified that at the end of the last class the students were chatting, giggling, and laughing as they often did at the end of the school day. Kilburn and K.J. started talking about books they were reading; Kilburn had a book that had military men and guns on it. Kilburn then turned to K.J. and, half smiling, said he was going to bring a gun the next day and shoot everyone, beginning with her. Then he began giggling, and said maybe not her first. K.J. testified that Kilburn started to "laugh or giggle" as if he were not serious, and that "he was acting kind of like he was joking." RP at 70-71. K.J. testified that she said "okay," and that she said "right" in an exaggerated tone. RP at 71, 81.

At one point K.J. testified that she did not feel scared when Kilburn spoke, just surprised. They had known each other two years and had never had a fight or a disagreement. She testified Kilburn always treated her nicely. She testified that Kilburn made jokes on occasion and the other students, including her, laughed at the jokes. He also talked

and joked with his friend who sat behind him. She testified that she later wondered whether he was joking or serious. RP at 71, 73 (she testified "he was acting kind of like he was joking, but I didn't know if he was joking or not").

These facts all suggest that a reasonable person in Kilburn's position would foresee that his comments would not be interpreted seriously. In particular the testimony about K.J.'s and Kilburn's past history and relationship, his treatment of her in the past, the regularity of Kilburn joking with her and others, and his giggling or laughter as he made the comments, "acting kind of like he was joking," make it difficult to conclude that he would reasonably foresee his comments being taken seriously. In addition, Kilburn and K.J. had been discussing their books, and his had guns on it—perhaps the origin of his comment about guns.

K.J. testified, however, that at the time Kilburn made the statement, "It freaked me out, cause we know that we're not supposed to say anything about bringing a gun or even say the word 'gun' at school"; she testified that if Kilburn said it, given that the students knew they were not to speak of guns, "he must have been serious . . . ." RP at 71, 95. She also testified that she "didn't know if it would happen" and that it "could have, with all the shooting things going around, and I didn't really know [Kilburn] that well . . . ." RP at 74.

We conclude that the evidence is insufficient for a reasonable person in Kilburn's place to foresee that K.J. would interpret his statement as a serious threat to cause bodily injury or death, given his past relationship with K.J., his having joked with her and his other friend in the class before, the discussion that had been taking place about the books they were reading, and his laughing or giggling when he made his comments. We are not concerned here with whether he might have been serious or not. We apply an objective standard which is, given the First Amendment values at issue, a difficult standard to satisfy.

Because of the First Amendment implications, a conviction for felony harassment based upon a threat to kill requires that the State satisfy both the First Amendment demands—by proving a true threat was made—and the statute, by proving all the statutory elements of the crime. Here, the State has failed to show a true threat, the conviction must be reversed, and we need not decide whether statutory elements are otherwise satisfied.

Based on insufficient evidence of a true threat, Kilburn's conviction is reversed. Accordingly, we do not reach the additional issue he raises, i.e., whether the evidence is sufficient to show that he made a threat *to kill*.

## Conclusion

An alleged threat to kill under RCW 9A.46.020 must be a "true threat" in the First Amendment sense. Neither the First Amendment nor the statute requires that the State prove that the defendant actually intended to carry out his or her threat in order to convict under RCW 9A.46.020. To determine whether a speaker has made a true threat, an appellate court must review the constitutionally critical facts in the record that are necessarily involved in the legal determination whether a true threat was made. Here, under this rule of independent review, we conclude that the evidence does not establish that Kilburn made a true threat that is unprotected speech. The evidence is therefore insufficient to support his conviction. Accordingly, we reverse.

ALEXANDER, C.J., and JOHNSON, SANDERS, and BRIDGE, JJ., concur.

OWENS, J. (dissenting) — This case presents two separate issues. First, did Martin Kilburn's statement constitute a true threat for First Amendment purposes, making it unprotected speech? Second, if the statement was a true threat, did the State prove all of the elements under RCW 9A.46.020 beyond a reasonable doubt? Although I agree with the rationale of the majority, I believe that Kilburn's

statement did constitute a true threat, making it unprotected speech. Further, I find that the State did prove all of the necessary elements under RCW 9A.46.020. For these reasons, I would affirm the appellate court and uphold Kilburn's conviction.

## I. TRUE THREAT

I agree with the majority that a threat may be a true threat even if the speaker does not actually intend to carry out the threat. Majority at 46 and 48. I further agree that an objective test should be applied to determine if the communication constitutes a true threat. The court must look at the entire context of the statement and ask if "a reasonable person in the defendant's place would foresee that in context the listener would interpret the statement as a serious threat or a joke." Majority at 46. For constitutional purposes, it is then appropriate for the court to engage in an independent review of the record, limited to the crucial facts necessary to decide if the speech is unprotected. Majority at 52. However, in this case, I part ways with the majority on the application of this independent review.

As the majority explains, K.J. and Kilburn were acquaintances talking at the end of class about their reading books. Verbatim Report of Proceedings (VRP) at 68-69. K.J. did not know Kilburn that well but previously had no bad relations with Kilburn. VRP at 74, 77-78.[4] During the discussion, Kilburn stated, " 'I'm going to bring a gun to school, shoot everyone—go around shooting [everybody and] I'm going to start with you first,' " and then said, " '[m]aybe I won't start with you first.' " VRP at 70. Although Kilburn was "kind of giggling" after the statement, K.J. was "surprised" and "kind of freaked [ ] out." VRP at 70, 75, 81. She immediately told a friend but was not sure if Kilburn was joking or was

---

[4] Although Kilburn and K.J. had not previously engaged in negative interactions, one act of harassment is sufficient to be prosecuted under the statute; a pattern of harassment is not necessary. *State v. Alvarez*, 128 Wn.2d 1, 13, 21, 904 P.2d 754 (1995).

serious. VRP at 72, 73. K.J. thought he might be serious because all of the kids knew they were not supposed to talk about bringing guns to school. VRP at 71, 75. K.J. was unsure of what to do and did not want to tell anyone if Kilburn was just joking, so she decided to go home and ask her parents what to do. VRP at 72, 73, 83. K.J. and her parents eventually decided to call the police, and K.J. felt that if Kilburn was serious she helped save lives. VRP at 75, 94-95.

The majority reviewed these same facts and concluded that a reasonable person in Kilburn's position would not foresee that his statement to shoot K.J., and other middle school students, could be interpreted as a serious threat. Majority at 52-54. I disagree. There was a school policy prohibiting such statements, which K.J. testified the kids knew about, and in light of the current atmosphere engendering fear around school shootings, a reasonable person in Kilburn's position would foresee that the communication would be interpreted by K.J. as a serious threat. Applying the majority's objective test, and independently reviewing the record, I conclude that Kilburn's speech was a true threat and was not protected by the First Amendment.

## II. HARASSMENT STATUTE

Although Kilburn's statement constitutes a true threat, and is not protected speech, the State must still prove all elements of harassment beyond a reasonable doubt. Kilburn claims that there is insufficient evidence to convict him under RCW 9A.46.020. This statute provides in relevant part:

(1) A person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:

(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or

. . . and

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. . . .

(2) A person who harasses another . . . is guilty of a class C felony if . . . (b) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened.

*See also* majority at 41. As the majority explains, this statute prohibits only true threats and is therefore not overbroad because true threats are not constitutionally protected speech. Majority at 43.

The appropriate standard for reviewing a sufficiency of evidence claim is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.'* " *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).[5] The reviewing court does not have to decide if *it* believes the evidence establishes guilt beyond a reasonable doubt, but rather must decide if *any* rational trier of fact could find guilt. *Id.* at 220-22. The court should give deference to the trier of fact "to resolve conflicts in testimony, weigh evidence and draw reasonable inferences therefrom." *State v. Gerber,* 28 Wn. App. 214, 216, 622 P.2d 888 (1981) (citing *Jackson,* 443 U.S. at 319). Further, an insufficiency of the evidence claim "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing *State v. Theroff,* 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd,* 95 Wn.2d 385, 622 P.2d 1240 (1980)). These inferences "must be drawn in favor of the State and interpreted most strongly against the defendant."

---

[5] Although the *Green* court applied both the *Jackson* test and the substantial evidence test, later courts used the *Jackson* test in reviewing sufficiency of evidence. Therefore, the *Jackson* test will be applied in this case. *See State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v. Rhoads,* 101 Wn.2d 529, 531, 681 P.2d 841 (1984); *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

*Id.* (citing *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977)).

The harassment statute has three main elements that the State must prove beyond a reasonable doubt. Kilburn had to knowingly threaten bodily injury, and K.J. had to be placed in reasonable fear that the threat would be carried out. Additionally, to sustain the class C felony conviction, Kilburn had to threaten to kill K.J.

The first element that must be proved is "knowingly threaten." I agree with the majority that this element is subjective: Kilburn had to subjectively know he was communicating a threat and that the communication was a threat of intent to cause bodily injury to the person threatened or another person. Majority at 48; *see State v. J.M.*, 144 Wn.2d 472, 481-82, 28 P.3d 720 (2001). As the court noted in *J.M.*, Kilburn had to be aware he was communicating the threat, Kilburn's intent to carry out the threat is not relevant, and the threat must be serious. *J.M.*, 144 Wn.2d at 481-82.

The trial court concluded that Kilburn "subjectively knew that he communicated a threat, and the respondent [Kilburn] knew that the communication he imparted was a threat of intent to cause bodily injury." Conclusion of Law (CL) 3, Clerk's Papers (CP) at 17-18. The court cited to *J.M.* and concluded that the intent could be proved by what was reflected in the words. *Id.*; *see also* VRP at 117-20 (discussing the subjective knowledge element of *J.M.*).[6] The court further found that Kilburn's actual intent to carry out the threat, and whether Kilburn was serious or joking, was irrelevant. CL 4, 5, CP at 18.

The trial court's findings of fact support this conclusion. *See State v. McDaniels*, 39 Wn. App. 236, 239, 692 P.2d 894 (1984) (noting that it is appropriate to start a review of the

---

[6] The trial judge formally incorporated her oral decision into the findings, conclusions, and judgment, so the oral opinion does have a binding effect. CP at 18, 22; *see also State v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966).

evidence by examining the trial court's findings of fact).[7] The trial court found that Kilburn said, " 'I'm going to bring a gun to school tomorrow and shoot everyone and start with you,' " and then he said, " 'maybe not you first.' " Finding of Fact (FF) 3, CP at 16. K.J. was not sure if Kilburn was kidding, and the more she thought about the statement the more scared she became. FF 5, 6, CP at 17. K.J. felt Kilburn might have been serious because the kids knew they were not supposed to talk about guns at school, and if he was not joking K.J. felt she had saved lives. FF 8, 9, CP at 17. Viewing these findings in the light most favorable to the State, a reasonable trier of fact could infer subjective knowledge: the communication was uttered out loud to K.J., there was a school policy all kids knew about, and it was not clear to K.J. whether Kilburn was joking or serious. Therefore, the State proved element one beyond a reasonable doubt.

The second element the State must prove is that K.J. was placed in reasonable fear. Based on K.J.'s testimony, the trial court found that K.J. was scared. VRP at 123. The court further found that this fear was reasonable because of previous shootings in other schools. VRP at 124; *see also* CL 6, CP at 18. The record supports the court's conclusion that K.J. was placed in reasonable fear that she would be killed. K.J. testified she was scared, she did not know Kilburn well, it was unclear if he was joking, and if he was not joking she feared the event could happen based on other school shootings. Viewing all inferences in the light most favorable to the State, a reasonable trier of fact could find K.J. was placed in reasonable fear she would be killed. Therefore, element two is proved beyond a reasonable doubt.

The last element the State must prove is that Kilburn threatened to kill K.J. Kilburn argues that a threat to shoot does not constitute a threat to kill. The trial court found that the communication was not ambiguous, was clear on

---

[7] As the majority notes, the findings of fact are unchallenged. Majority at 39 n.1.

its face, and could not be interpreted in some other way. VRP at 116-17. Viewing all inferences in favor of the State, a rational trier of fact could find that the communication constituted a threat to kill, not just shoot and injure, K.J. Therefore, element three is proved beyond a reasonable doubt.

## III. CONCLUSION

After independently reviewing the record and applying the objective standard test for a true threat, I believe Kilburn's statement to K.J. was unprotected speech. Viewing the evidence and all reasonable inferences in the light most favorable to the State, I further conclude that a rational trier of fact could have found that the State proved all elements of harassment beyond a reasonable doubt. Based on these conclusions, I would affirm the trial court and the Court of Appeals.

IRELAND, CHAMBERS, and FAIRHURST, JJ., concur with OWENS, J.