IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67829-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ERIC S. FREEMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 4, 2013 |
| | ) | |

BECKER, J. — Eric Freeman, a homeless veteran, was convicted of three counts of felony harassment at a bench trial, based on threats he made to workers at a homeless service center. Findings of fact and conclusions of law were not entered until 10 months later and were not designated to the appellate record until long after appellate briefs were filed. Because the late entry of findings and conclusions prejudiced the defendant and hampered appellate review, we reverse.

BACKGROUND

On April 15, 2011, after seeking housing assistance at various agencies, Freeman came to the Whatcom Homeless Service Center in Bellingham and found the business office door locked. The center is located in the Opportunity Council building. Freeman had been searching for housing for many months.

He had come to the center previously to meet with someone and fill out an application.

According to testimony at trial, the center had walk-in hours only in the morning. In the afternoon, people ordinarily were seen only by appointment. It was afternoon when Freeman arrived, without an appointment, and the office was locked. Three employees—Francisco Javier Flores, Sarah Emerson, and Gary Dolin—were inside. Freeman began knocking and pulling on the locked door. Emerson came to speak with Freeman and opened the door. She did not recognize Freeman, but she knew his name because the day before, she had received and reviewed his housing application, and had put it on a long waiting list. Emerson told Freeman to go to the Community Resource Center, another agency located in the same building that had walk-in hours from nine to five. She testified that Freeman mentioned he had been given "the runaround" by different service providers in the community. She said Freeman was speaking in a raised voice and was making "a lot of quick movements," but his demeanor did not concern her at the time.

Dolin, having heard raised voices, approached the doorway. Emerson asked Dolin to meet with Freeman to explain how their program worked. She then returned to her office where she was meeting with a client. Dolin testified he remained at the door and tried to explain the center's program, but Freeman was agitated and frustrated and he "raised his voice about the lack of assistance that he was getting." Dolin, who works for the U.S. Department of Veterans Affairs in

2

a program to find housing for homeless veterans, testified that he could not recall whether he knew Freeman was a veteran.

According to Dolin, Freeman said twice "he would leave and go get a gun and come back and shoot everyone," and told Dolin to "go ahead and call the police and the F.B.I." Freeman left, and Dolin locked the door. Dolin told Emerson what Freeman had said and then he called the police.

Dolin testified that he took the threat seriously and thought he and his colleagues were in danger. Flores testified he overheard Freeman threaten to "come back with a gun and take care of us," and he was "scared" because it was a threat "to come back with a gun and kill us." Emerson recalled Freeman saying, "the runaround would stop today." Initially, she interpreted this statement as simply an expression of frustration, but after hearing about the threat from Dolin, she felt it meant Freeman was going to act on the threat.

The State charged Freeman on April 21, 2011, with three counts of felony harassment based on a threat to kill Dolin, Flores, and Emerson. Freeman waived his right to a jury trial. At a bench trial on October 3, 2011, Freeman testified he did not recall making any threats to the center workers, though he may have communicated his frustration at not being able to find housing. He testified it would be unlike him to be hostile or threatening and said he wanted the workers to know he is not a threat to any of them.

At the conclusion of the bench trial, the trial court made a brief oral ruling finding Freeman guilty as charged. The trial court entered a judgment and sentence on October 3, 2011, but did not enter findings of fact and conclusions of

3

law as required by CrR 6.1(d). The court sentenced Freeman to six months, which he had already served by the time of trial and sentencing.

Freeman filed a notice of appeal on October 17, 2011. He filed his opening brief of appellant on April 9, 2012. He assigned three errors: that the information lacked the essential element of "true threat," that the evidence was insufficient to prove all the elements of felony harassment, and that the court erred in imposing discretionary costs as part of his sentence. Among other things, Freeman argued that the evidence was insufficient to prove that his threat was a threat to kill, as opposed to merely a threat of bodily harm.

On July 17, 2012, the State filed a brief of respondent. The brief states that the appellate prosecutor had requested the trial prosecutor to file findings of fact and conclusions of law "as soon as feasible," which was anticipated to be soon because the trial prosecutor had recently returned from a bereavement leave. "Counsel for the State does not object if Freeman requests to assign supplemental error after Findings are entered." Brief of Respondent at 3, n.2.

On August 7, 2012, the trial prosecutor filed an affidavit with the trial court stating that she had prepared proposed findings and conclusions, noted them up for entry in the trial court on August 13, and mailed copies to appellate counsel for Freeman. She stated that she had not reviewed the appellant's brief before preparing the findings.

On August 13, 2012, the trial court signed and entered the State's proposed findings of fact and conclusions of law. This document notes "Copy received" by trial counsel for Freeman.

The State did not designate either the prosecutor's affidavit or the findings and conclusions to the appellate record at this time.

On August 17, 2012, Freeman filed a reply brief.

On January 16, 2013, this court scheduled Freeman's appeal to be heard by a panel of judges on February 25, 2013, without oral argument.

On February 7, 2013, the State filed a motion to supplement the record with the findings and conclusions that were filed in superior court the previous August.

On February 7, 2013, Freeman filed supplemental assignments of error to two findings of fact and seven conclusions of law. Because of the delay in entry of the findings and conclusions, Freeman has not had the opportunity to identify or brief issues raised by the supplemental assignments of error.

INFORMATION

Freeman's first argument on appeal is that the charging document lacked all essential elements because it did not allege Freeman's threat was a "true threat." The Supreme Court recently held the true threat requirement is not an essential element of a harassment statute. State v. Allen, No. 86119-6, 2013 WL 259383, at *8 (Wash. Jan. 24, 2013). Following Allen, we reject Freeman's first assignment of error.

SUFFICIENCY OF THE EVIDENCE

Freeman's second assignment of error is insufficiency of the evidence. Among other things, he contends the State failed to present sufficient evidence that he uttered a true threat to kill.

Review of this argument is hampered because of the belated entry of the findings of fact. Under the rules of criminal procedure, written findings of fact and conclusions of law are to be entered at the conclusion of a bench trial. CrR 6.1(d); State v. Head, 136 Wn.2d 619, 621-22, 964 P.2d 1187 (1998). The purpose of the rule is to enable the appellate court to review the questions raised on appeal. Head, 136 Wn.2d at 622. "An appellate court should not have to comb an oral ruling to determine whether appropriate 'findings' have been made, nor should a defendant be forced to interpret an oral ruling in order to appeal his or her conviction." Head, 136 Wn.2d at 624.

Normally, the appellate court will remand a case for entry of findings, as was done in Head with the Supreme Court refusing the State's request to make do with the oral ruling. Here, we do have findings, but they were not entered until August 2012, after the appellate briefing was virtually complete. And they were not made part of the appellate record for nearly six months, in February 2013, very close to the hearing date.

Where findings are entered belatedly, reversal may be appropriate where a defendant can demonstrate actual prejudice, for example where there is a strong indication that the findings ultimately entered have been tailored to meet issues raised on appeal. Head, 136 Wn.2d at 624.

To convict Freeman of felony harassment under RCW 9A.46.020, the court needed to find that Freeman knowingly made a threat to kill and that the fear experienced by the center employees was of the same threat. State v. C.G., 150 Wn.2d 604, 609, 80 P.3d 594 (2003). A threat to kill, as opposed to a threat

of bodily injury, provides the critical distinction in this case between felony harassment and the gross misdemeanor of harassment. RCW 9A.46.020(2)(a); (2)(b)(ii). The last words of Freeman's closing argument were a request that the trial court find him guilty only of a gross misdemeanor if it found him guilty at all.

The nature of a threat "depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken." C.G., 150 Wn.2d at 611.

The trial court's oral ruling did not resolve the nature of the threat. The trial judge found generally that Freeman's statements were "true threats," but he did not classify them as threats to kill:

> In my opinion the facts of this case, when everything is considered, indicate clearly that the statement made, statements made by Mr. Freeman were indeed true threats. They were not jokes, idle talk or hyperbole; that he meets the standard of, at the very least, negligently making these statements, and they, at the very least, making these statements. That a reasonable person would believe that they were true threats and specifically that a reasonable person in the defendant's place would foresee in that context a listener would interpret them as a serious threat, not a joke. There is no evidence that they were a joke as I said a little bit earlier.
> So on counts 1, 2 and 3, I will find Mr. Freeman guilty.

Among the seventeen findings of fact the trial court entered 10 months later, the closest approximation to a finding that the nature of the threat was a threat to kill is finding of fact 17: "The defendant, in his position, could foresee that the context of his statements would be interpreted as a serious threat *to kill* and not a joke." (Emphasis added.) Conclusions of law 1 and 2 state that Freeman "knowingly threatened to kill" the three workers and that his words or conduct placed them "in reasonable fear that the threats to kill would be carried

7

out." These are among the recently designated findings and conclusions to which Freeman has made supplemental assignments of error.

Finding of fact 17, by adding the words "to kill," resolves a factual issue that the court did not resolve at the time of trial. We do not question the trial prosecutor's statement that she prepared the findings without reading the brief of appellant, but the addition of "to kill" suggests tailoring of the findings to fill in the gaps in the trial court's oral ruling. The oral ruling did not explain why the conviction was for a felony, requiring a true threat to kill. Freeman's statement that he was going to get a gun and come back and shoot everyone is not self-evidently a true threat, let alone a true threat to kill. See State v. Schaler, 169 Wn.2d 274, 289, 236 P.3d 858 (2010) (defendant's statements about wanting to kill his neighbors were not utterances that "unequivocally lead to a finding of a true threat"). This situation illuminates the reason for the requirement in CrR 6.1(d) to enter findings and conclusions at the time of trial. "A prosecuting attorney required to prepare findings and conclusions will necessarily need to focus attention on the evidence supporting each element of the charged crime, as will the trial court." Head, 136 Wn.2d at 622.

Freeman is prejudiced by the delay and apparent tailoring because he has not had an opportunity to brief his assignments of error to the written findings. The prejudice is pronounced because the harassment statute criminalizes pure speech, and core First Amendment protection is implicated. State v. Kilburn, 151

Wn.2d 36, 48-49, 84 P.3d 1215 (2004).

In briefing the issue of sufficiency of the evidence, the State relies on the usual deferential standard for testing the sufficiency of the evidence on appeal in a case tried to a jury, as stated in State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). That is not the appropriate standard to use when the question is whether a statement falls within the ambit of a true threat. Kilburn, 151 Wn.2d at 49. The failure to identify and brief the appropriate standard of review is another deficiency that hampers appellate review.

Under Kilburn, a threat is unprotected only if it constitutes a "true threat." Kilburn, 151 Wn.2d at 43, 52. A true threat is a statement made in a context or under such circumstances wherein a reasonable speaker would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person. Kilburn, 151 Wn.2d at 43. This is a test that focuses on the speaker's objective intent; it does not depend on what the speaker subjectively intended. Kilburn, 151 Wn.2d at 44-45.

Here, neither the oral ruling nor the written findings identify the crucial facts tending to prove that a person in Freeman's position would foresee that his remarks would be taken seriously. In closing argument, the State's sole comment bearing on this point was that Freeman did not testify that he was joking. The trial court's oral ruling ratified the State's cursory analysis of Freeman's statements: "They were not jokes, idle talk or hyperbole."

One of the recently entered findings goes beyond the oral ruling and states, "There was no evidence that the defendant's statements were made as a

joke *or 'blowing off steam.'"* Finding of Fact 18 (emphasis added). Freeman has

timely made a supplemental assignment of error to this finding also, and is

prejudiced by his lack of opportunity to brief it. While there is no evidence that

Freeman was joking, there was evidence that he was blowing off steam in

response to getting the cold shoulder from an agency that purportedly was there

to offer help. Flores testified that Dolin's conversation with Freeman became a

shouting match, with Dolin shouting back at Freeman when Freeman raised his

voice. Dolin himself testified that Freeman appeared to be expressing frustration

in general rather than directing his anger at Dolin personally.

We grant the State's motion to supplement the record with the written

findings and conclusions. However, even when supplemented, the record does

not establish that the prosecution for felony harassment was fully adjudicated at

trial by the finder of fact. Critical factual issues such as the nature of the threat

were not resolved until written findings were entered 10 months after the trial,

and even the written findings are too conclusory to facilitate appellate review.

The delays and apparent tailoring have prejudiced Freeman's ability to argue

insufficiency of the evidence to prove a true threat to kill.

The convictions for felony harassment are reversed.

Becker, J.

WE CONCUR:

Leach, C.J.

10