FILED
COURT OF APPEALS
DIVISION II

2014 APR -1 AM 9: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44645-6-II |
| Respondent, | |
| v. | |
| ALEJANDRO BUSTOS-OCHOA, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Alejandro Bustos-Ochoa appeals from his delivery of a controlled substance conviction. He claims that the State offered insufficient evidence to prove that he transferred methamphetamine to a confidential informant (CI). He argues that law enforcement lost contact and control over the CI for nearly 90 minutes while they waited for the transaction to happen, and that no one actually saw Bustos-Ochoa give the CI the methamphetamine. Because the State offered sufficient evidence at trial from which a reasonable juror could infer that Bustos-Ochoa delivered methamphetamine to the CI, we affirm Bustos-Ochoa's conviction.

FACTS

On March 22, 2012, a CI, arrested earlier that day on different drug charges, assisted the Cowlitz/Wahkiakum Narcotics Task Force ("task force") in a controlled buy[1] in the parking lot of the Longview Home Depot. The task force supervised the CI at all times between his arrest and the end of the controlled buy later that day. Kelso Police Detective Jeffrey Brown drove the CI in the CI's vehicle from the CI's home to the location for the controlled buy. Before the controlled buy, Longview Police Detective Brian Streissguth searched the CI and his car. Streissguth did not find any drugs or cash on the CI or anywhere in his car. Detective Streissguth gave the CI $1,240 in prerecorded cash to purchase an ounce of methamphetamine.

Although the detectives' testimony differed about the passage of time during the controlled buy, the substance of the events and observations was consistent. The task force had sight of the CI at all times between 8:00 PM and 10:00 PM while waiting for the meeting to happen. The CI never interacted with anyone or any part of his vehicle until a black Volkswagon arrived around 10:00 PM. The CI was in the black Volkswagon for a few minutes, and then the Volkswagon drove away. Although none of the surveillance officers could see inside of the black Volkswagon when the CI got in, Detectives Streissguth and James Hanberry saw the driver as he left. After the black Volkswagon left, Kelso Police Sergeant Kevin Tate saw the CI "interact" with the fuel door area of his car where it was planned the CI would hide the drugs he purchased. After the meeting was over, Detective Streissguth again searched the CI and his car

---

[1] A "controlled buy" is when law enforcement uses a CI to conduct a drug buy. Law enforcement searches the CI before and after the buy, holds any money found on the CI until after the buy, and gives the CI only prerecorded cash for the drug deal. Law enforcement follows the CI to the meeting location and there is continuous surveillance of the CI to ensure that he/she interacts only with the targeted suspect.

finding about an ounce of methamphetamine in the fuel door of the car which had not been there before. The CI no longer had the $1,240 Detective Streissguth gave to him.

All of the detectives, including Sergeant Tate and Detective Hanberry, testified that they followed the Volkswagon after it left the Home Depot parking lot and eventually arrived at an address on 78th Street in Vancouver. They saw the male driver, identified as Bustos-Ochoa, get out of the car and walk into the house.

After police executed a search warrant on the Vancouver house, the State charged Bustos-Ochoa with delivery of a controlled substance. At trial, the detectives involved in the surveillance of the controlled buy testified to the above facts. The CI did not testify because the State could not locate him. A jury found Bustos-Ochoa guilty as charged, and he now appeals.

## ANALYSIS

Bustos-Ochoa argues that there was insufficient evidence to convict him because no one saw the delivery occur and the CI did not testify at trial. Because there was sufficient evidence from which a jury could infer that Bustos Ochoa delivered a controlled substance to the CI, we affirm.

An insufficiency claim admits the truth of the State's evidence and all inferences reasonably drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). There is sufficient evidence to convict when, after viewing the evidence in the light most favorable to the State, any rational juror could have found the elements of the crime met beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. Direct and circumstantial evidence carry the same weight. *State v. Allen*, ___ Wn. App. ___, 317 P.3d 494, 498 (2014). We do not reweigh

No. 44645-6-II

the evidence and substitute our judgment for that of the jury. *State v. Kilburn*, 151 Wn.2d 36, 57, 84 P.3d 1215 (2004).

RCW 69.50.401(1) prohibits the manufacture, delivery, or possession of any controlled substance with intent to manufacture or deliver the controlled substance. Methamphetamine is a schedule II controlled substance. RCW 69.50.206(d)(2). "Delivery" and "deliver" mean the actual or constructive transfer of a substance from one person to another. RCW 69.50.101(f).

Bustos-Ochoa argues that without direct observation of what occurred in the car and without the CI's testimony, the State cannot prove that Bustos-Ochoa transferred the methamphetamine[2] to the CI. Bustos-Ochoa also asserts that the task force did not observe the CI for over 90 minutes and that the CI could have gotten the methamphetamine from another person because Sergeant Tate and Detective Hanberry testified that they had only been watching the CI for a short time. We disagree.

The State needed to prove that Bustos-Ochoa transferred methamphetamine to the CI on March 22, 2012. Before meeting with Bustos-Ochoa, the CI did not have drugs on his person or anywhere in his car. Detective Streissguth gave the CI $1,240 in premarked bills to buy an ounce of methamphetamine. After the black Volkswagon left, Detective Streissguth found about an ounce of methamphetamine in the CI's car and the CI no longer had the premarked cash. Detectives Streissguth and Hanberry identified the driver of the black Volkswagon and the man who walked into the house at 78th Street as Bustos-Ochoa. Despite the discrepancies in their calculation of time, all the State's witnesses stated that they had sight of the CI from the time he was arrested earlier in the day until after the controlled buy was complete and never observed

_____

[2] Both parties stipulated that the substance Detective Streissguth recovered from the fuel door of the CI's car was methamphetamine.

4

No. 44645-6-II

him interact with anyone else or any other part of his car until after the meeting with the black Volkswagon. Based on this evidence and the reasonable inferences therefrom, any rational juror could determine that Bustos-Ochoa transferred methamphetamine to the CI on March 22, 2012.

Although no one directly witnessed Bustos-Ochoa delivering the methamphetamine to the CI in the car, the reasonable inferences drawn from the State's evidence establish that a transfer of methamphetamine occurred. Accordingly, we affirm his conviction.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J.

We concur:

HUNT, J.

MAXA, J.