IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32126-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL CORRIE LEMMONS JR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Daniel Lemmons challenges his felony harassment conviction, arguing that the statement for which he was convicted was puffery rather than a true threat and was therefore protected under the First Amendment of the United States Constitution. We conclude that his statement was a true threat and, accordingly, affirm the conviction.

## FACTS

Mr. Lemmons uttered his threats amidst an ongoing dispute between himself and his adversary, Marc Hathaway. A long-past misunderstanding left Mr. Lemmons believing Mr. Hathaway owed him money. Hostility grew to the point where, every time the pair encountered each other, Mr. Lemmons would demand payment. At their most

recent encounter, Mr. Lemmons' verbal aggression turned to actual violence when he punched Mr. Hathaway in the face.

On August 2, 2013, Marc Hathaway and his wife relaxed in the beer garden of the local bar and grill known as the Mulz'z Shed where both are employed. On this particular evening, Mrs. Hathaway had just gotten off her shift and joined Mr. Hathaway for a drink and a smoke. Around ten or eleven, Mr. Lemmons' vehicle raced into the adjoining parking lot, spun around, and came to a stop about thirty yards from where Mr. Hathaway was standing. From inside the vehicle, Mr. Lemmons began screaming at Mr. Hathaway. Witnesses testified to hearing him say "Marc, you are a fucking pussy. Get out here; let's take care of this now. You owe me." Mr. Lemmons then began lodging insults against Mr. Hathaway's wife. Her mother, who was also among the bar's patronage, rushed up to Mr. Lemmons' car and slapped him across the face. Mr. Hathaway too bristled, tore off his shirt and approached the vehicle saying "I have had it. This is it. We are going to finish it out here."

Meanwhile, Mrs. Hathaway pulled her mother away and a dozen or so bystanders, including the bar's owner, Christopher Kowzan, began to gather to closer observe the fray. The threats soon turned deadly when Mr. Lemmons shouted, "I am going to shoot everyone." Mr. Kowzan, who stood nearby, testified that he then saw Mr. Lemmons display the top section of a semi-automatic pistol. At this escalation, Kowzan called the police and Lemmons sped off. Mr. Hathaway also testified to seeing the gun.

2

The prosecutor filed two counts of felony harassment—one count naming Mr. Hathaway as a victim and one count naming Mr. Kowzan. The matter ultimately proceeded to jury trial. During closing, defense counsel argued that his client's statement lacked the touchstones of a "true threat," that is, the circumstances on the night of the incident were such that he never believed his statements would engender fear of actual harm in Mr. Hathaway and Hathaway did not respond as someone in reasonable fear. The statement, he argued, was merely a remark made in anger rather than a criminal threat. He also called into question the credibility of the witnesses who had been drinking for some time prior to the incident.

The jury disagreed, in part, with the argument and returned a verdict of guilty with respect to Mr. Hathaway, but acquitted Mr. Lemmons on the count related to Mr. Kowzan. Mr. Lemmons timely appealed to this court.

## ANALYSIS

The sole issue presented is whether there was sufficient evidence to sustain the conviction. Mr. Lemmons argues that the evidence was only sufficient to show that his statement was mere puffery and blather and did not cross into an area of unprotected speech.

Mr. Lemmons was convicted under RCW 9A.46.020, which provides:

> (1) A person is guilty of harassment if:
> (a) Without lawful authority, the person knowingly threatens:

(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; . . . [and]

(b)The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. . . . [and]

. . . .

(2)(b)(ii) . . . the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.

This statute "criminalizes pure speech." *State v. Kilburn*, 151 Wn.2d 36, 41, 84 P.3d 1215 (2004). Accordingly, it must comply with the First Amendment's prohibition against laws abridging the freedom of speech. *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013). Though the First Amendment is broad, it does not extend to a number of categories of unprotected speech. *Kilburn*, 151 Wn.2d at 42-43 (citing *Bose v. Consumers Union of United States, Inc.*, 466 U.S. 485, 504, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)). One of these categories is "true threats." *Id.* at 43. "To avoid unconstitutional infringement of protected speech, RCW 9A.46.020(1)(a)(i) must be read as clearly prohibiting only 'true threats.'" *Id.* (citing *State v. Williams*, 144 Wn.2d 197, 208, 26 P.3d 890 (2001); *State v. J.M.*, 144 Wn.2d 472, 478, 28 P.3d 720 (2001)).

A "true threat" is defined as "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm on or to take the life'" of another. *Id.* at 43 (internal quotation marks omitted) (quoting *Williams*, 144 Wn.2d at 207-08). It is not one said in jest, idle talk, or political argument. *Id.* at 43. In

4

No. 32126-6-III
*State v. Lemmons, Jr.*

addition, "whether a true threat has been made is determined under an objective standard

that focuses on the speaker." *Id.* at 44. The speaker need not intend to actually carry it

out. *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

When an argument of sufficiency of the evidence implicates a core First

Amendment protection, an appellate court reviews the whole record to ensure that the

judgment does not constitute a forbidden intrusion into the field of free expression.

*Kilburn*, 151 Wn.2d at 48-49. Under this standard, we are only required to examine

crucial facts, that is, those facts necessary to make a legal determination of whether the

speech is protected. *Id.* at 51.

With these principles in mind, we turn to whether Mr. Lemmons' statement

constituted a true threat. He claims that his statement was a matter of blather or puffery.[1]

He claims he exaggerated his empty threat to match the intensity of the enclosing "mob."

Angry exaggerations, he argues, are no more illegal than mouthy and coarse insults. *City

of Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (speech

does not fall within one of the unprotected categories simply because it is provocative or

challenging). However, this argument does not hold if, objectively, he foresaw that Mr.

Hathaway might believe his threat. Just prior to making the threat, Mr. Lemmons raced

---

[1] *See State v. J.M.* 144 Wn.2d 472, 482, 28 P.3d 720 (2001) (including "puffery" in the description of protected speech); *see State v. King*, 135 Wn. App. 662, 669, 145 P.3d 1224 (2006) (including "blather" in the description of protected speech).

No. 32126-6-III
*State v. Lemmons, Jr.*

into the parking lot, peeling out. He shouted his purpose of collecting on a long-past debt from Mr. Hathaway which was the subject of ever-heating hostility. And, under cover of night and within the protection of his vehicle, he threatened to shoot. His gun was observed by Hathaway and Kowzan. A reasonable person in Mr. Lemmons' position, under these circumstances, would have expected Mr. Hathaway to take his statements seriously, not as blather or puffery.

Accordingly, there is sufficient evidence in this record for the jury to conclude that Mr. Lemmons made a true threat.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

6