

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75870-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRANDON L. VANWINKLE, | ) | |
| | ) | FILED: April 23, 2018 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Brandon VanWinkle appeals his conviction for intimidating a judge. VanWinkle contends there was insufficient evidence of a true threat. Given the serious tone and the context in which VanWinkle made the statements, we conclude a reasonable person in VanWinkle's position would foresee that his comments would be taken seriously. Thus, there was sufficient evidence to support VanWinkle's conviction.

VanWinkle also argues he received ineffective assistance of counsel because his attorney failed to raise a diminished capacity defense. Because the record does not suggest VanWinkle's personality disorder prevented him from forming the requisite intent when he threated Judge Ekstrom, we conclude VanWinkle cannot show ineffective assistance of counsel.

Therefore, we affirm.

## FACTS

VanWinkle was represented by Alexandria Sheridan on a pending charge. On December 17, 2015, during a criminal docket before Judge Alex Ekstrom, VanWinkle attacked another defendant. The court decided VanWinkle would be shackled for his next court appearance and a security hearing would take place to determine what security measures would be needed in the future.

On December 30, 2015, when Sheridan told VanWinkle about these rulings, VanWinkle stated he was going to cut up the judge in his chambers. VanWinkle also threatened the prosecutor and defense counsel. Two correction officers overheard the conversation.

The State charged VanWinkle with one count of intimidating a judge. And following trial, the jury convicted VanWinkle.

VanWinkle appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

VanWinkle contends the State failed to present sufficient evidence of a true threat to sustain a conviction for intimidating a judge.

"'The sufficiency of the evidence is a question of constitutional law that we review de novo.'"[1] To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask

---

[1] State v. Hummel, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (quoting State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[3]

To convict a defendant of intimidating a judge under RCW 9A.72.160, the State must prove beyond a reasonable doubt "(1) that a person directs a threat, either directly or indirectly; (2) to a judge; and (3) because of a ruling or decision by that judge in any official proceeding."[4] In part, "'[t]hreat' means to communicate directly or indirectly the intent . . . [t]o cause bodily injury in the future to the person threatened or to any other person."[5]

"To avoid violating the First Amendment, our Supreme Court has held that it will 'interpret statutes criminalizing threatening language as proscribing only unprotected true threats.'"[6] Accordingly, we construe RCW 9A.72.160 as prohibiting only true threats.[7]

---

[2] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[3] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[4] State v. Hansen, 122 Wn.2d 712, 719, 862 P.2d 117 (1993) (citing RCW 9A.72.160).

[5] RCW 9A.04.110(28).

[6] State v. Locke, 175 Wn. App. 779, 789, 307 P.3d 771 (2013) (quoting State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013)).

[7] See also State v. Kepiro, 61 Wn. App. 116, 125, 810 P.2d 19 (1991) ("[I]t is implicit in the definition of 'threat' in RCW 9A.04.110(25)(a) that only true or serious threats are covered.").

"The test for determining a 'true threat' is an objective test that focuses on the speaker."[8] "A 'true threat' is 'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'"[9]

When considering the sufficiency of the evidence of a true threat, the First Amendment demands more than application of the usual standard.[10] "[W]e must independently examine the whole record to ensure that the judgment does not constitute a forbidden intrusion into the field of free expression."[11] "However, this review is limited to review of those 'crucial' facts that necessarily involve the legal determination whether the speech is unprotected."[12]

> [I]n true threat cases, it is not just the words and phrasing of the alleged threat that matter, but also the larger context in which the words were uttered, including the identity of the speaker, the composition of the audience, the medium used to communicate the alleged threat, and the greater environment in which the alleged threat was made.[13]

---

[8] State v. Kohonen, 192 Wn. App. 567, 575, 370 P.3d 16 (2016) (citing State v. Kilburn, 151 Wn.2d 36, 54, 84 P.3d 1215 (2004)).

[9] Kilburn, 151 Wn.2d at 43 (internal quotation marks omitted) (quoting State v. Williams, 144 Wn.2d 197, 208-09, 26 P.3d 890 (2001)).

[10] Locke, 175 Wn. App. at 790.

[11] Id.

[12] Kilburn, 151 Wn.2d at 52.

[13] Kohonen, 192 Wn. App. at 580.

Here, VanWinkle told Sheridan "that he would cut up the judge in chambers and not allow anyone to clean it up."[14] Samuel Cover and Brandon Goulet, correction officers, overheard VanWinkle make the statement to Sheridan. Sheridan and Officer Cover testified that VanWinkle did not appear to be joking.

Judge Ekstrom testified he was concerned about these threats and he took certain measures to feel more secure. When asked whether he believed that VanWinkle could carry out his threats, Judge Ekstrom testified, "That's a more difficult question. Again, I have a bailiff. There is security through the corrections officers. That said, it's a human endeavor, things happen. . . . so there is always a level of concern because we know that no system is perfect."[15]

In State v. Kilburn, our Supreme Court considered whether there was sufficient evidence of a true threat to sustain Kilburn's conviction of felony harassment.[16] Kilburn told his classmate, K.J., "I'm going to bring a gun to school tomorrow and shoot everyone and start with you."[17] The court concluded that "the evidence is insufficient for a reasonable person in Kilburn's place to foresee that K.J. would interpret his statement as a serious threat . . . given his past relationship with K.J., his joking with her and his other friend in the class before,

---

[14] Report of Proceedings (Aug. 2, 2016) at 291.

[15] Id. at 280.

[16] 151 Wn.2d 36, 38, 84 P.3d 1215 (2004).

[17] Id. at 39.

the discussion that had been taking place about books they were reading, and his laughing or giggling when he made his comments.[18]

In State v. Locke, Division Two of this court considered whether there was sufficient evidence of a true threat to sustain Locke's conviction for making threats against the governor.[19] The court determined there was sufficient evidence for a reasonable person in Locke's possession to foresee his statements would be taken seriously because of the violent tone, the specificity, and the lack of a preexisting relationship between the governor and Locke.[20] The court was also persuaded by the context of the statements; Locke sent the emails 17 days after a member of Congress was shot.[21]

Here, VanWinkle did not laugh or otherwise appear to be joking when he made the statement.[22] In fact, Sheridan was so frightened by VanWinkle's statements that she was unable to visit with her clients for the rest of the day. VanWinkle did not have a preexisting relationship with Sheridan or Judge Ekstrom from which he might have an expectation that they would not take his statements

---

[18] Id. at 53.

[19] 175 Wn. App. 779, 784, 307 P.3d 771 (2013).

[20] Id. at 792-94.

[21] Id. at 792.

[22] See Kohonen, 192 Wn. App. at 580 ("These reactions provide a guide for what constituted a reasonable reaction under the circumstances and, therefore, for what reaction a reasonable speaker under the circumstances would have foreseen.").

seriously.[23] Also, VanWinkle made the violent threats after Judge Ekstrom witnessed him attack a defendant in the courtroom. In this context, there is sufficient evidence that a reasonable person engaged in such conduct would reasonably foresee his comments being taken seriously.

We conclude the State did present sufficient evidence of a true threat to support VanWinkle's conviction for intimidating a judge.

## II. Ineffective Assistance of Counsel

VanWinkle argues he received ineffective assistance of counsel because his attorney failed to raise a diminished capacity defense.

We review ineffective assistance of counsel claims de novo.[24] "Ineffective assistance of counsel is a fact-based determination, and we review the entire record in determining whether a defendant received effective representation at trial."[25]

To prevail on a claim of ineffective assistance of counsel, the defendant must show both that defense counsel's representation was deficient and that the deficient representation prejudiced the defendant.[26] "'When counsel's conduct can

---

[23] See Locke, 175 Wn. App. at 793. Sheridan did previously represent VanWinkle.

[24] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[25] State v. Carson, 184 Wn.2d 207, 215-16, 357 P.3d 1064 (2015).

[26] State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

be characterized as legitimate trial strategy or tactics, performance is not deficient.'"[27]

The failure of defense counsel to present a diminished capacity defense satisfies both prongs when the facts support such a defense.[28] "A diminished capacity defense requires evidence of a mental condition, which prevents the defendant from forming the requisite intent necessary to commit the crime charged."[29]

Here, during sentencing for the December 17 assault, the trial court gave a downward sentenced based on an expert report related to a failed diminished capacity defense. In that case, the expert testified VanWinkle assaulted a fellow defendant because the man was being sentenced for assaulting a child, and VanWinkle was triggered by his own history. The expert diagnosed VanWinkle with a personality disorder.

Defense counsel offered the report in the current case to argue for a downward sentence. But the report was specific to VanWinkle's mental health as it related to the assault. Nothing in the record suggests VanWinkle's personality disorder prevented him from forming the requisite intent when he threatened Judge Ekstrom on December 30. And defense counsel's decision not to present a

---

[27] Id. at 33 (quoting State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

[28] State v. Tilton, 149 Wn.2d 775, 784, 72 P.3d 735 (2003).

[29] Id.

diminished capacity defense can be characterized as a legitimate trial strategy because the same defense failed in the assault case.

We conclude VanWinkle cannot show ineffective assistance of counsel. Therefore, we affirm.

WE CONCUR: