IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. JOSHUA NOLEN WHITAKER, Appellant. | No. 86436-0-I DIVISION ONE UNPUBLISHED OPINION |

CHUNG, J. — Joshua Whitaker asks this court to reverse his conviction for assault in the second degree with intent to commit felony harassment because the harassment statute is facially unconstitutional. Because Whitaker does not establish manifest constitutional error, we affirm Whitaker's conviction and sentence.

FACTS

On June 29, 2022, Aerial Hangartner was working at a Safeway in Everett, Washington. She saw and recognized Joshua Whitaker,[1] with whom she had interacted on several previous occasions while working as a Safeway employee. Hangartner described previous interactions with Whitaker as "escalating." At one point she "had to ask him to leave the store voluntarily after some non-threatening misbehavior, and she ultimately had to tell Whitaker that he was trespassed from the store." The last

---

[1] As Whitaker did not challenge the court's findings of fact following a bench trial, they are verities on appeal. State v. A.M., 163 Wn. App. 414, 419, 260 P.3d 229 (2011) ("Where there are findings of fact, as in a bench trial, unchallenged findings of fact are verities on appeal.").

interaction she had had with him, a day or two prior to June 29, resulted in Whitaker screaming at her.

On the day of the charged incident, at approximately 2 p.m., "Whitaker was walking around the Safeway parking lot attempting to raise a small amount of money from Safeway customers." She remained "some distance" away from him and had her mobile phone in her hands. Recognizing Whitaker "as a person she had previously told to leave Safeway property," Hangartner saw him "sticking his head in someone's car in the parking lot and began approaching him intending to ask him to leave." When she called out, "[h]ey buddy, you can't be here, you have got to leave," Whitaker immediately responded, "[f]uck you, I am going to rape and kill you," and then began hitting Hangartner, while repeating words such as "[y]ou don't deserve to live, you don't deserve anything." Hangartner protected her face with her hands, and the punches Whitaker threw landed on her arms. At one point, Whitaker hit Hangartner's hand and her phone fell to the ground. When Hangartner reached down to pick up her phone, Whitaker moved toward her as if to kick her in the face.

Whitaker then stepped back, walked away, and then promptly returned to punch Hangartner a few more times, again saying, "I am going to kill you and rape you," "you deserve to die," and "you deserve what is happening to you." Whitaker then stopped, groped his own groin area with his hand saying "I am going to rape you still," and walked away. Hangartner proceed to call 911 and followed Whitaker at a distance, "describing what had occurred . . . and so she could tell dispatch where he was going."

Whitaker testified at trial in his defense and admitted to punching "his victim" and to thereafter saying, "I will rape and kill you." Whitaker nonetheless denied that he was

the person on a security surveillance video that captured the incident, denied that Hangartner was "his victim," and asserted he was being facetious when he used the words "I will rape and kill you." The court found that Hangartner identified Whitaker as the person who had hit her and threatened her on June 29, 2022, and that Hangartner was in reasonable fear that Whitaker meant to carry out his threats.

Whitaker was convicted of assault in the second degree with intent to commit felony harassment—threat to kill. The court concluded that "the State proved beyond a reasonable doubt that [] Whitaker threatened to kill [] Hangartner immediately or in the future, and that he did so knowingly." At the sentencing hearing, the court followed the parties' joint recommendation and sentenced Whitaker to the low end of the standard range, a confinement term of 63 months and 18 months of community custody.

## DISCUSSION

Whitaker argues that the criminal harassment statute, RCW 9A.46.020, is facially unconstitutional because it employs a negligence standard, rather than the recklessness standard articulated by the United States Supreme Court in Counterman v. Colorado, 600 U.S. 66 (2023). Accordingly, he asserts that his conviction must be reversed because it is predicated on an unconstitutional statute. The State counters that Whitaker waived the issue because he failed to raise it below and does not establish manifest constitutional error. We agree with the State.

While we may "refuse to review any claim of error which was not raised in the trial court," a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a). To satisfy this standard, an appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension. State v.

3

Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). In other words, the appellant must "identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial." Id. at 926-27.

In analyzing the asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude. State v. Scott, 110 Wn.2d 682, 687, 757 P.2d 492 (1988). We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error. Id. at 689-91. A constitutional challenge to a statute presents a question of law that we review de novo. City of Bothell v. Barnhart, 172 Wn.2d 223, 229, 257 P.3d 648 (2011). A reviewing court presumes that a statute is constitutional, and the party challenging it bears the burden of proving otherwise beyond a reasonable doubt. Morrison v. Dep't of Labor & Indus., 168 Wn. App. 269, 272, 277 P.3d 675 (2012).

Whitaker raises a facial challenge to the statute. To prevail in a facial constitutional challenge to a statute, a party must show that "no set of circumstances exists in which the statute, as currently written, can be constitutionally applied." City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004).

Under RCW 9A.46.020(1)(a)(i), a person is guilty of harassment if "without lawful authority, the person knowingly threatens . . . to cause bodily injury immediately or in the future to the person threatened." Harassment is a class C felony if it involves "threatening to kill the person threatened or any other person." RCW 9A.46.020(2)(b)(ii). "The statute's plain language delineates a knowledge element: 'the defendant must subjectively know' that they are communicating a threat and know that the communication 'is a threat of intent to cause bodily injury to the person threatened or to

4

another person.' " State v. Calloway, 31 Wn. App. 2d 405, 417, 550 P.3d 77 (2024), review granted, 3 Wn.3d 1031 (2024) (internal quotation marks omitted) (quoting State v. Trey M., 186 Wn.2d 884, 895, 383 P.3d 474 (2016)).

Further, because this statute criminalizes a form of pure speech, it must be " 'interpreted with the commands of the First Amendment clearly in mind.' " State v. Williams, 144 Wn.2d 197, 207, 26 P.3d 890 (2001) (quoting Watts v. United States, 394 U.S. 705, 707 (1969)). The First Amendment does not protect "true threats." Williams, 144 Wn.2d at 207-08; Watts, 394 U.S. at 708. Thus, "[u]nder the First Amendment only a true threat suffices for a conviction under RCW 9A.46.020." State v. Kilburn, 151 Wn.2d 36, 41, 84 P.3d 1215 (2004).[2]

Whitaker contends that the harassment statute is facially unconstitutional because it conflicts with Counterman v. Colorado, which held that a criminal conviction based on a "true threat" not protected by the First Amendment requires proof that the defendant acted with a mental state of at least recklessness—i.e., that "the defendant consciously disregarded a substantial risk that [their] communications would be viewed as threatening violence." 600 U.S. 66, 69 (2023). Whitaker argues that because this court "is bound to follow the Washington Supreme Court's prior interpretations of the statute," which resulted in a standard similar to negligence, we cannot interpret RCW 9A.46.020 as constitutional.

However, even if some of our Supreme Court's pre-Counterman decisions allowed convictions based on true threats with proof of a mens rea less than

---

[2] "A true threat is a serious threat, not one said in jest, idle talk, or political argument. Kilburn, 151 Wn.2d at 43. In other words, communications that "bear the wording of threats but which are in fact merely jokes, idle talk, or hyperbole" are not true threats. State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

recklessness,[3] RCW 9A.46.020 may still be constitutionally applied to the extent there is proof of at least recklessness. Division Two of this court addressed this apparent incompatibility in Calloway and rejected the same facial challenge to the constitutionality of RCW 9A.46.020. The Calloway court reasoned that there was "no direct conflict between the statutory language and the Counterman articulation of what amounts to a true threat." Calloway, 31 Wn. App. 2d at 420. Thus, instead of declaring the harassment statute unconstitutional, it determined "[w]e need only hold . . . that the State must prove the defendant was at least 'aware that others could regard [the] statements as threatening violence and deliver[ed] them anyway.' " Id. (internal quotation marks omitted) (quoting Elonis v. U.S., 575 U.S. 723, 746 (2015)) (Alito, J., concurring in part and dissenting in part). Further, the court stated, "[a]lthough this holding contradicts the Washington Supreme Court's pre-Counterman cases, we do not presume the Washington Supreme Court will now reject a United States Supreme Court holding on the federal constitution. . . . We are permitted to apply the recently adopted United States Supreme Court rule." Id.

We agree with the reasoning in Calloway and similarly conclude that RCW 9A.46.020 is not facially unconstitutional because we presume that statutes are constitutional, and the harassment statute's plain language permits us to interpret it in a way that complies with the First Amendment. Whitaker cannot show that, under the First Amendment, " 'no set of circumstances exists in which the statute, as currently written,

---

[3] State v. J.M., 144 Wn.2d 472, 488, 28 P.3d 720 (2001) ("We hold that RCW 9A.46.020(1)(a)(ii) does not require that the person making a threat to cause bodily injury know or should know that the threat will be communicated to the victim of the threat."); State v. Kilburn, 151 Wn.2d at 48; State v. Schaler, 169 Wn.2d at 287 (definition of a true threat "requires the defendant to have some mens rea as to the result of the hearer's fear: simple negligence"); State v. Trey M., 186 Wn.2d at 908 (declining invitation to overrule Washington's settled precedent in determining a true threat for First Amendment purposes).

can be constitutionally applied,' " as is required for a successful facial challenge.

<u>Didlake v. State</u>, 186 Wn. App. 417, 423, 345 P.3d 43 (2015) (quoting <u>City of Redmond</u>, 151 Wn.2d at 669).

CONCLUSION

Affirmed.

Chung, J.

WE CONCUR:

Birk, J.

, ACJ