**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

MARCH 19, 2026

*Stone, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 19, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 103374-5 |
| Respondent, | ) | |
| v. | ) | En Banc |
| TURNER LEE CALLOWAY, | ) | |
| Petitioner. | ) | Filed: <u>March 19, 2026</u> |

MADSEN, J.—The First Amendment was designed to protect essential pillars of a democratic society—most notably freedom of speech. U.S. CONST. amend. I. Still, this freedom is not without limits. This case asks us to determine whether Washington's harassment statute, RCW 9A.46.020, is facially unconstitutional in violation of the First Amendment. This court previously held that in order to be convicted of felony harassment, the State must prove that a "true threat" was made, and that the defendant was negligent as to whether their words would be understood as a threat.

Turner Lee Calloway was convicted of one count of felony harassment. While his appeal was pending, the United States Supreme Court released its decision in *Counterman v. Colorado*, 600 U.S. 66, 82, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023), which held that recklessness is the appropriate mens rea to support a criminal conviction for communications constituting a "true threat."[1] Based on *Counterman*, Calloway argued that Washington's harassment statute is unconstitutional because it criminalizes threats based on a negligence standard. He further argued that as a result, the jury instructions used in his case were erroneous and that the State cannot prove that the error was harmless beyond a reasonable doubt due to the controverted evidence in this case. The Court of Appeals affirmed his conviction and held that *Counterman* did not render the harassment statute unconstitutional on its face. Calloway sought review here.

We hold that the harassment statute is constitutional. *Counterman* requires a mens rea standard of at least "recklessness." As written, our felony harassment statute does not prevent the State from proving a true threat based on recklessness. However, the jury instruction defining a "true threat" informed the jury that the mens rea required to convict Calloway of making a true threat under the statute was negligence, while *Counterman* held the mens rea must be at least recklessness. Therefore, the remaining issue is whether the instructional error was harmless. This court recently clarified the test for constitutional harmless error in *State v. Magaña-Arévalo*, No. 103586-1, slip op. at 4 (Wash. Jan. 15, 2026). Accordingly, we affirm the Court of Appeals in part, reverse in

---

[1] Both parties agree that *Counterman* applies since Calloway's appeal was pending when *Counterman* was released.

part, and remand for the court to determine whether the error in the "true threat" instruction was harmless beyond a reasonable doubt as explained in *Magaña-Arévalo*.

BACKGROUND

Turner Calloway and A.D. were close friends for about a decade. Calloway initially had a romantic interest in A.D.; however, they never dated and they maintained a platonic friendship. Calloway and A.D.'s friendship ebbed and flowed, particularly in 2020, since a miscommunication resulted in the pair not speaking for about a year. In October 2021, they both apologized and reconciled. The reconciliation was short-lived; A.D. testified that Calloway began acting strange after drinking some beers when they were together at a bar watching a football game. He then got angry with her when she did not want to go see the city lights in Seattle with him. Shortly thereafter, things took a turn.

In the morning on the last day of October, Calloway testified that he received a call from A.D. after he had only texted, not called, about whether she had seen his missing glasses. However, A.D. testified that Calloway was calling her nonstop that same morning with the calls starting as early as 6:51 a.m. A.D. testified that the calls were brief since Calloway would say something and then hang up and call again, and if she did not answer, he would leave threatening and degrading voicemails. A.D. initiated some of the calls to Calloway and left a voice message, which the jury heard, where she used profanity, mocked Calloway, and told him she was not scared of him; although she

3

later testified that she was "very terrified" and was attempting to "[s]care him off." Verbatim Rep. of Proc. (VRP) (July 5, 2022) at 118-19.

As the day went on, A.D. testified that the threats escalated. In the afternoon when the calls persisted, A.D. had an acquaintance of hers join in a three-way call and pose as her boyfriend. She testified that Calloway threatened to kill them both. A.D. further stated that "he threatened everything; kidnap me, what he was going to do to me." *Id*. at 116. However, Calloway testified that the acquaintance had threatened to kill him, which concerned his girlfriend, leading him to take her to her parent's home for the night.

When questioned about the exact words Calloway used to threaten her, A.D. testified that he told her:

> Bitch, you going to die today; bitch you ain't shit; bitch you going [to] the devil the day that you die; you going to hell today, bitch; today is your day; you're going to die today, bitch and hang up, call back; I'm on my way to kill you, bitch; you're going to die today, bitch.

*Id*. at 120.[2] These threats prompted A.D. to call the police later in the evening.

Deputy Brent Johnson responded to the call and testified that upon arriving he found A.D. crying and shaking, and that she had told him she was being harassed and was going to leave for the night for fear of her safety. He further testified that while he was speaking with A.D. for about half an hour, "[h]er cell phone kept ringing over and over." VRP (July 6, 2022) at 153. A.D. informed the deputy that Calloway kept calling her and she proceeded to answer some of the calls on speakerphone, but the deputy was

---

[2] A.D. testified that Calloway threatened her during phone calls, through text messages, and by leaving voicemails. However, none of these were entered into evidence as A.D. testified that she had a government phone with limited data. VRP (July 5, 2022) at 137.

unable to understand what was being said. Eventually she handed the phone to Deputy Johnson, who identified himself as a Pierce County Sheriff's deputy and asked Calloway why he kept calling A.D. Calloway angrily told the deputy to "fuck off." *Id*. at 156. He then stated he was outside A.D.'s house and was going to kill A.D.

At this point, Deputy Johnson called for another police unit to come to their location for both his and A.D.'s safety in case Calloway did show up. Shortly after, Deputy Riley Jorgensen arrived and they were all standing on A.D.'s porch when they saw a white Chevy truck drive by, which A.D. identified as Calloway's vehicle.

Calloway's vehicle was stopped by another deputy about 30 blocks from A.D.'s home. Deputy Jorgensen testified that Calloway had told him that he had been drinking with his friends and had driven by to fight A.D.'s "boyfriend" who had threatened him earlier in the day. He further stated he had no intention of fighting A.D. Calloway later testified that he went to see why her "boyfriend" wanted to kill him.

Calloway was placed under arrest and charged with one count of felony harassment and one count of stalking. Calloway later testified that he made no threats to A.D., Deputy Johnson, or A.D.'s acquaintance.

At the time of trial, this court held that "[a] 'true threat' is 'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another person." *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004) (second alteration in original) (internal quotation marks omitted)

(quoting *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001)). The jury

received the following instruction:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person.
>
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

Clerk's Papers (CP) at 20 (jury instruction 7).

In its closing argument, the State argued:

> It's not a jest or idle talk to say, bitch, you're going to die. You're done. I'm outside your—I'm outside, I'm around the corner, I'm coming to kill you, as you heard Deputy Johnson testify that he heard the defendant himself say over the phone. These were threats that were not done in jest; they were not done as a joke. These are threats the defendant—that a reasonable person in the defendant, the speaker's shoes, what the intention behind those were and what those words meant, and the impact they would have on Ms. [A.D.].
>
> So putting that all together, on October 31st, 2021, the defendant knowingly threatened to kill [A.D.] immediately or in the future.

VRP (July 6, 2022) at 224. The defense argued that the State did not prove

beyond a reasonable doubt that Calloway made any threats at all given the lack of

voicemails or text messages produced at trial to show that Calloway made the

threats that A.D. and Deputy Johnson testified to hearing.

The jury found Calloway not guilty of the stalking charge but guilty of the

harassment charge. Calloway appealed.

6

After he appealed his judgment and sentence, the United States Supreme Court released its decision in *Counterman.* Based on *Counterman*, Calloway asserted a First Amendment facial challenge to Washington's harassment statute, RCW 9A.46.020(1),[3] and argued further that *Counterman* rendered the true threat jury instruction used in his case erroneous since it misinformed the jury of the requisite mens rea and that the error was not harmless.

The Court of Appeals held, among other things, that RCW 9A.46.020 is not facially unconstitutional. It further held that "the jury instructions in this case were erroneous because they allowed the jury to convict Calloway without finding that he acted recklessly, as *Counterman* requires. But this error was harmless beyond a reasonable doubt in light of the threatening statements Calloway made and the circumstances under which he made them." *State v. Calloway*, 31 Wn. App. 2d 405, 409-10, 550 P.3d 77, *review granted*, 3 Wn.3d 1031 (2024). Therefore, Calloway's judgment and sentence was affirmed, but the case was remanded for the trial court to strike the $500 crime victim penalty assessment. *Id*. at 427. Calloway sought discretionary review here. We granted review.

---

[3] Calloway was convicted of violating an older version of the harassment statute; however, we cite the current version as the amendment does not impact our analysis.

ANALYSIS

1. Standard of Review

The constitutionality of a statute is reviewed de novo. *State v. Reynolds*, 2 Wn.3d 195, 201, 535 P.3d 427 (2023). "We interpret statutes as constitutional if we can." *ZDI Gaming, Inc. v. State ex rel. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 619, 268 P.3d 929 (2012); *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015) ("We construe statutes to avoid constitutional doubt").

2. RCW 9A.46.020 Is Facially Constitutional

A statute is presumed constitutional, and the burden falls on the challenging party to demonstrate unconstitutionality beyond a reasonable doubt. *Gerberding v. Munro*, 134 Wn.2d 188, 196, 949 P.2d 1366 (1998). A statute is facially unconstitutional if "'no set of circumstances exists in which the statute, as currently written, can be constitutionally applied.'" *State v. Hunley*, 175 Wn.2d 901, 916, 287 P.3d 584 (2012) (quoting *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004)). Essentially, the statute is "rendered totally inoperative." *Id*. Statutes that criminalize protected speech will be invalidated only if a limiting instruction cannot save them. *See State v. Johnston*, 156 Wn.2d 355, 363, 127 P.3d 707 (2006).

Both the federal and state constitutions protect freedom of speech. U.S. CONST. amends. I, XIV; WASH. CONST. art. I, § 5. The government cannot punish or restrict speech based on its message, ideas, subject matter, or content. *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972). However, the

government may do so in limited instances, such as communications involving "true threats." This is because we recognize the government's overriding interest in protecting "'individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.'" *Kilburn*, 151 Wn.2d at 43 (internal quotation marks omitted) (quoting *State v. J.M.*, 144 Wn.2d 472, 478, 28 P.3d 720 (2001)).

State courts were divided on whether the First Amendment requires proof of a defendant's subjective mental state in true threat cases or whether an objective reasonable person standard suffices. Washington courts have historically applied an objective standard to determine whether a statement constitutes a true threat. We stated that a "true threat" is "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'" *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010) (quoting *Kilburn*, 151 Wn.2d at 43). However, "we have never held the true threat requirement to be an essential element of a harassment statute." *State v. Allen*, 176 Wn.2d 611, 628, 294 P.3d 679 (2013) (plurality opinion).

In *Schaler*, we interpreted the threats-to-kill provision of RCW 9A.46.020, which is the same provision at issue here, to require only that a defendant be at least negligent as to their threats' effect on listeners. Therefore, we analyzed whether "a reasonable speaker would foresee that the threat would be considered serious." *Schaler*, 169 Wn.2d

9

at 283; *see State v. Trey M.*, 186 Wn.2d 884, 892-93, 902-04, 383 P.3d 474 (2016) (applying an objective reasonable person standard, rather than a subjective intent to threaten, to determine whether a statement is a "true threat"); *Williams*, 144 Wn.2d at 207-08.

Calloway argues that based on *Counterman*, our felony harassment statute is facially unconstitutional and cannot be constitutionally applied because the legislature has acquiesced to our use of the negligence-based standard to determine whether a statement is a "true threat."[4] *See O'Day v. King County*, 109 Wn.2d 796, 807, 749 P.2d 142 (1988) (once this court construes a statute, that construction becomes a part of the legislation as if it were written into it).

---

[4] Calloway cites a Michigan case, *People v. Kvasnicka*, No. 371542, 2025 WL 492469, at *1 (Mich. Ct. App. Feb. 13, 2025), to support his argument that our felony harassment statute is unconstitutional under *Counterman* and the First Amendment. The Michigan Court of Appeals held that their statute proscribing the making of a terrorist threat was facially unconstitutional because it did not provide a proper mens rea standard as applied to the defendant. *Id*. at 4. The *Kvasnicka* case was vacated by the Michigan Supreme Court and remanded to the Court of Appeals, which, on remand, held that the statute at issue was not facially unconstitutional. *People v. Kvasnicka*, No. 371542, 2025 WL 2045006, at *6 (Mich. Ct. App. July 21, 2025). The Michigan Supreme Court has now granted review of three issues: "(1) whether the plain language of MCL 750.543m(1)(a) includes a scienter requirement that is consistent with *Counterman* . . . (2) whether the constitutional-doubt canon permits a court to deviate from ordinary principles of statutory interpretation when assessing 'whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided[,]' . . . and (3) whether it is appropriate to adopt a limiting construction of MCL 750.543m(1)(a) to remedy any remaining constitutional deficiency." *People v. Kvasnicka*, 28 N.W.3d 710, 710 (Mich. Dec. 29, 2025) (order granting review) (second and third alterations in original). The case has yet to be decided and thus has limited persuasive value. As discussed below, we will hold a statute to be facially unconstitutional only if it cannot be constitutionally applied. Here, we hold that a limiting instruction remedies any constitutional deficiency in the statute.

*Counterman* rejected an objective reasonableness standard in favor of a subjective mental state requirement in true threat prosecutions; thus, the State has the burden to prove at least "recklessness." This standard requires that a defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 69.

In *Counterman*, the defendant was charged with violating Colorado's stalking statute, COLO. REV. STAT. 18-3-602(1)(c).[5] *Id*. at 70. The defendant argued that his messages were not "true threats" and moved to dismiss the charge on First Amendment grounds. *Id*. at 71. The trial court denied the motion after finding that an objective, reasonable person would view the messages as threatening. *Id*. The appellate court affirmed. *Id*. However, the United States Supreme Court ultimately determined that the First Amendment requires the State to prove that the defendant was at least reckless even though that standard would shield some true threats from liability. *Id*. at 75. It held that in true threat cases, a subjective mental state of "recklessness" is constitutionally required to avoid chilling protected speech. "Recklessness" in the context of true threats "means

---

[5] The statute stated:

> (1) A person commits stalking if directly, or indirectly through another person, the person knowingly:
> > (a) Makes a credible threat to another person, and in connection with the threat, repeatedly follows, approaches, contacts, or places under surveillance that person . . . . or
> > (b) Makes a credible threat to another person and, in connection with the threat, repeatedly makes any form of communication with that person . . . . or
> > (c) Repeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person . . . that would cause a reasonable person to suffer serious emotional distress . . . .

that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* at 79 (quoting *Elonis v. United States*, 575 U.S. 723, 746, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015) (Alito, J., concurring in part and dissenting in part)).

However, as discussed above, a statute is facially unconstitutional only if there are no circumstances in which the statute, as currently written, can be constitutionally applied. That is not the case here.

Our felony harassment statute provides that

(1) A person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:

(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; . . . [and]

. . . .

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.

(2) (a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.

(b) A person who harasses another is guilty of a class C felony if any of the following apply: . . . (ii) the person harasses another person under subsection (1) (a) (i) of this section by threatening to kill the person threatened or any other person . . . .

RCW 9A.46.020. The statute requires the State to prove that a defendant knowingly threatened another person. Yet nothing in the statute prevents it from being applied in a constitutionally permissible manner post-*Counterman*. It neither requires the State to

prove a true threat based on negligence nor prevents the State from proving a true threat based on recklessness. Since *Counterman* does not change any of the elements of our felony harassment statute, it is sufficient to give the jury an instruction defining true threat and explaining the requisite mens rea required to convict in true threat prosecutions as was done here. We have commonly held that such an instruction is sufficient to protect a defendant's First Amendment rights. *See Allen*, 176 Wn.2d at 630; *Johnston*, 156 Wn.2d at 363-64; *State v. Tellez*, 141 Wn. App. 479, 483-84, 170 P.3d 75 (2007).

3. Harmless Error

Here a "to convict" jury instruction was given, separate from the "true threat" instruction, requiring the jury to find that Calloway *knowingly* threatened to kill A.D. immediately or in the future. The issue is that pre-*Counterman*, true threat jury instructions used an objective "reasonable person" standard regarding a defendant's understanding that the content of their communication would be understood by the listener as a threat. In other words, the true threat instruction did not ensure that the jury understood it must find, at a minimum, that Calloway was "aware 'that others could regard [the] statements as' threatening violence," but that he "'deliver[ed] them anyway.'" *Counterman*, 600 U.S. at 79 (quoting *Elonis*, 575 U.S. at 746 (Alito, J., concurring in part and dissenting in part)).

Given the error, it is the State's burden to prove harmlessness beyond a reasonable doubt. *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). Not every erroneous jury instruction requires a conviction to be set aside. *See Neder v. United*

*States*, 527 U.S. 1, 15-16, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)) ("'[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'"). This requires a reviewing court to consider both the strength of the evidence of guilt as well as the prejudicial impact of the erroneous jury instruction. *See Magaña-Arévalo*, No. 103586-1, slip op. at 4; *State v. Brown*, 147 Wn.2d 330, 338, 58 P.3d 889 (2002).

The harmless error analysis "serve[s] a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). An error is not harmless "when the evidence and instructions leave it ambiguous as to whether the jury could have convicted on improper grounds." *Schaler*, 169 Wn.2d at 288. Alternatively, a misstatement of the law in a jury instruction or even an omission of an essential element is harmless if that element is supported by uncontroverted evidence. *Brown*, 147 Wn.2d at 341.

Since it is rare that the State's key evidence in criminal trials will not be controverted in some way, the reviewing court may find harmless error when after a thorough examination of the record, it concludes beyond a reasonable doubt that the jury verdict would have been the same. *State v. Berube*, 150 Wn.2d 498, 505 n.2; 79 P.3d 1144 (2003). We remand to the Court of Appeals to determine whether the State can

prove that the erroneous jury instruction here was harmless beyond a reasonable doubt as clarified in *Magaña-Arévalo*.

## CONCLUSION

We hold that our felony harassment statute is facially constitutional and that the true threat jury instruction in this case did not properly inform the jury of the requisite mens rea to be convicted under our felony harassment statute. We affirm in part, reverse in part, and remand for the Court of Appeals to determine whether the State has established beyond a reasonable doubt that the instructional error was harmless.

_____
Madsen, J.

WE CONCUR:

_____     _____
Stephens, C.J.                      Montoya-Lewis, J.

_____     _____
Johnson, J.                           Whitener, J.

_____     _____
González, J.                           Mungia, J.

_____     _____
                                             Yu, J.P.T.

No. 103374-5

GORDON McCLOUD, J. (concurring)—I agree with the majority that the United States Supreme Court's decision in *Counterman v. Colorado*[1] changed Washington law as it relates to our felony harassment statute, RCW 9A.46.020. But I disagree about exactly how it changed Washington law.

The majority acknowledges that "the true threat instruction [in this felony harassment case] did not ensure that the jury understood it must find, at a minimum, that [Turner Lee] Calloway was 'aware that others could regard [the] statements as threatening violence,' but that he 'deliver[ed] them anyway.'" Majority at 13 (third and fourth alteration in original) (quoting *Counterman*, 600 U.S. at 79). The majority nevertheless concludes that "*Counterman* does not change any of the elements our felony harassment statute." *Id.* at 13.

The majority does not reach this conclusion because our felony harassment statute already used the mental state, or "mens rea," of "recklessness," as *Counterman* requires. The majority could not do that because RCW 9A.46.020 does not use that word, and our prior controlling precedent interpreting that statute

---

[1] 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023).

requires the State to prove only negligence, not recklessness. *See, e.g.*, *State v. Schaler*, 169 Wn.2d 274, 287, 236 P.3d 858 (2010). Instead, the majority reaches that conclusion because the statute does not bar trial courts from telling the jury the correct mens rea (i.e., recklessness) if they choose to do so. *Id.* at 12-13.

This analysis is strained. I would candidly acknowledge that our felony harassment statute does not clearly say that the State must prove at least recklessness to obtain a conviction. *See* RCW 9A.46.020. I would further acknowledge that our controlling precedent has interpreted that statute to mean that the State must prove only negligence, not recklessness, knowledge, or intent, to prove a violation of that statute. *E.g.*, *Schaler*, 169 Wn.2d at 287. I would continue that those prior controlling precedential interpretations do concern an element of the crime—the element of intent, or mens rea, or scienter. And I would explain that that interpretation was incorrect, based on *Counterman*. Finally, I would adopt a different interpretation of the statute—based on its plain language and controlling rules concerning interpretation of statutes to protect First Amendment rights—by concluding that RCW 9A.46.020 requires the State, in order to gain a conviction, must prove that the defendant knowingly threatened the victim. U.S. CONST. amend. I.

I therefore concur in the outcome, but offer a different analysis.

I.       *Counterman* Overrules Our Prior Precedent About an Element of Felony Harassment.  It Holds That the State Must Prove a Mental Element of at Least Recklessness, Rather Than Just Negligence

As explained above, our prior controlling precedent held that the mens rea for a conviction of felony harassment is negligence. *E.g.*, *Schaler*, 169 Wn.2d at 287.

*Counterman* overrules that line of cases. *Counterman* ruled that "[t]rue threats of violence are outside the bounds of First Amendment protection and punishable as crimes" and that "a statement can count as such a threat based solely on its objective content." 600 U.S. at 69, 72. To be clear about that point, the Supreme Court said it again in different words: "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat . . ." *id*. at 74 (citing *Elonis v. United States*, 575 U.S. 723, 733, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015)), and again: "The existence of a threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Id*. (quoting *Elonis*, 575 U.S. at 733). So, words constitute a true threat if they are sufficiently harassing, threatening, or terrorizing—regardless of the speaker's mental state.

*Counterman* continued, however, that such true threats cannot be criminalized unless the government proves something more: that the defendant made that true threat with a culpable state of mind, that is, a mental state of at least recklessness.

3

That's clear from *Counterman*'s introductory remarks, framing the question that court was addressing: "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection. *And a statement can count as such a threat based solely on its objective content*. The first dispute here is about *whether the First Amendment nonetheless demands* that the State in a true-threats case prove that the defendant was aware in some way of the threatening nature of his communications." *Id.* at 72 (emphasis added).

The *Counterman* majority ruled that the answer is yes—a statute that criminalizes true threats requires the State to prove a culpable mental state as an element of the crime for the statute to comply with the First Amendment. To be sure, *Counterman* reiterates that "'[t]rue threats' of violence is [a] historically unprotected category of communications." *Id.* at 74 (citing *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); *United States v. Alvarez*, 567 U.S. 709, 717-18, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012) (plurality opinion)). But *Counterman* continues that those unprotected true threats still can't be criminalized without proof of one additional element—the element of a culpable mental state of at least recklessness: "Yet the First Amendment may still demand a subjective mental-state requirement shielding some true threats from liability. The reason relates to what is often called a chilling effect. . . . [A]n important tool to prevent

4

that [chilling effect] outcome—to stop people from steering 'wide[ ] of the unlawful zone'—is to condition liability on the State's showing of a culpable mental state." *Id.* at 75 (fourth alteration in original).

Thus, the Supreme Court ruled that the government must prove a specific intent element—the element that the defendant had a culpable mental state when uttering a "true threat" that was objectively threatening—in order to convict one of a crime. The mental state element that the Supreme Court chose—after considering the risks and benefits of different mental states—was at least "recklessness." *Id.* at 79-83.

Notably, the Supreme Court called this recklessness mental state a necessary "element" of the crime in a case like Counterman's: "The same reasoning counsels in favor of requiring *a subjective element* in a true-threats case." *Id.* at 77 (emphasis added).

I don't think the Supreme Court was being sloppy when they called this mental state an "element." I think they meant it. The majority used the same description "element" again just one paragraph later in explaining how it came to its conclusion.[2] And the majority analogized to prior Supreme Court decisions requiring

---

[2] "The reasoning—and indeed some of the words—came straight from this Court's decisions insisting on a subjective element in other unprotected-speech cases, whether involving defamation, incitement, or obscenity." *Id.* at 78.

proof of "actual malice" in defamation and libel cases and proof of scienter in obscenity cases[3]—all elements of those claims.

I therefore disagree with the majority's assertion that *Counterman* did not change any element of Washington's felony harassment crime. It changed the required mental state element that we had previously read into that statute from negligence to at least recklessness.

II.     WE SHOULD NOW INTERPRET THE FELONY HARASSMENT STATUTE'S MENTAL ELEMENT OF KNOWLEDGE TO APPLY TO ALL PARTS OF THE STATUTE—INCLUDING THE "TRUE THREATS" PART—TO RENDER IT CONSTITUTIONAL

RCW 9A.46.020 lacks that required mental state element in its subsection prohibiting "true threat[s]." Does that mean that Washington's harassment statute is unconstitutional on its face? I answer no for two reasons.[4]

---

[3] *Id.* at 76 ("False and defamatory statements of fact, we have held, have 'no constitutional value.' Yet a public figure cannot recover for the injury such a statement causes unless the speaker acted with 'knowledge that it was false or with reckless disregard of whether it was false or not.' *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) . . . ." (citations omitted) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974))); *see also id.* at 80-81.

[4] I disagree with the majority's statement about what Calloway must show to win on this point in this case. The majority asserts, without qualification, "A statute is presumed constitutional, and the burden falls on the challenging party [Calloway] to demonstrate unconstitutionality beyond a reasonable doubt." Majority at 8 (citing *Gerberding v. Munro*, 134 Wn.2d 188, 196, 949 P.2d 1366 (1998)). But we have qualified that traditionally cited standard quite a bit: "As used in this context, '"beyond a reasonable doubt"' is not an evidentiary standard but a reflection of '"respect for the legislature."' *Sch. Dists.' All. for*

First, that's not what the *Counterman* Court ruled. It ruled that Colorado's

harassment statute was unconstitutional as applied in that particular case, but not

unconstitutional on its face.

Second, Washington's felony harassment statute *does* contain a mens rea,

even though it's not in the subsection defining "true threat." It states in relevant part

(and I'm highlighting the mens rea of "knowledge" here):

> (1) A person is guilty of harassment if:
>
> (a) Without lawful authority, the person *knowingly* threatens:
>
> (i) To cause bodily injury immediately or in the future to the
> person threatened or to any other person; [and]
>
> . . . .
>
> (b) The person by words or conduct places the person threatened
> in reasonable fear that the threat will be carried out. "Words or conduct"
> includes, in addition to any other form of communication or conduct,
> the sending of an electronic communication.
>
> (2)(a) Except as provided in (b) of this subsection, a person who
> harasses another is guilty of a gross misdemeanor.
>
> (b) A person who harasses another is guilty of a class C felony if
> any of the following apply: … (ii) the person harasses another person
> under subsection (1) (a) (i) of this section by threatening to kill the
> person threatened or any other person . . . .

---

*Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 606, 244 P.3d 1 (2010). It
signifies that we will not invalidate a statute unless the challenger, 'by argument and
research, convince[s] the court that there is no reasonable doubt that the statute violates the
constitution.' *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998)." *Quinn v.
State*, 1 Wn.3d 453, 471 n.9, 526 P.3d 1 (2023) (alteration in original).

RCW 9A.46.020 (emphasis added). As noted by the majority, the to-convict jury instruction in this case used basically the same language and structure, including the "knowingly" mental element in the first part but not in the second part, concerning true threats. Majority at 13. I agree with the majority that that was a problem in this case.

And I also agree with the majority that it doesn't have to be a problem in future cases. But not just because we can reword jury instructions to say what the statute doesn't. It's because we can interpret the statute itself to require that its listed mens rea of "knowingly" applies to all portions of the statute. And proof of "knowledge," of course, suffices to prove "recklessness" because knowledge is a higher—more culpable—mental state than recklessness. RCW 9A.08.010(1)(b), (c).

I would interpret the mens rea of "knowingly," which appears in the introductory portion of the RCW 9A.46.020's subsection (1)(a), to modify both elements listed in subsection (1), that is, both (1)(a)(i)'s element of the type of threat ("[t]o cause bodily injury immediately or in the future to the person threatened or to any other person") and (1)(b)'s element concerning the impact of the threat ("[t]he person by words or conduct places the person threatened in reasonable fear that the threat will be carried out").

I understand that the introductory clause in subsection (1)(a) would not necessarily, grammatically, be read to apply to subsection (1)(b). But it can be read that way if necessary to save the statute from constitutional infirmity. That's exactly what the United States Supreme Court said in *United States v. X-Citement Video, Inc*. when interpreting another statute that would have violated the First Amendment if a limiting mens rea from one subsection were not read to also cover an act described in a later subsection. 513 U.S. 64, 70-71, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994) (imposing scienter requirement on every element of a federal statute that prohibited shipping and transporting child pornography, including the child's age, even though that was not necessarily the best grammatical read of the elements to which the listed scienter applied).

The *X-Citement Video* decision did not come to that analysis out of the blue. It relied on prior Supreme Court decisions in which it had done basically the same thing—read the element of "knowledge" in one part of a criminal statute to apply to other parts of that criminal statute to save the statute from constitutional infirmity, even though that was not the most grammatical reading of the statute.[5] The Supreme

---

[5] For example, the Court in *X-Citement Video* relied on *Morissette v. United States*, 342 U.S. 246, 271, 72 S. Ct. 240, 96 L. Ed. 2d 288 (1952), which took the "knowingly" mens rea in the federal embezzlement statute and applied it to all the prohibited acts listed in that statute even though, grammatically, it really modified only one of those verbs ("'converts'"). 513 U.S. at 70. As another example, the Court in *X-Citement Video* relied on *Liparota v. United States*, 471 U.S. 419, 424 n.6, 426, 105 S. Ct. 2084, 85 L. Ed. 2d 434

9

Court ruled that it was the best constitutional reading of those statutes, and that's

what counted.

CONCLUSION

The problem in this case—as the majority correctly notes—is that the

instructions did not ensure that the jury applied the statutory mens rea of knowledge

to the defendant's own understanding of his threatening words. But we do not need

to rewrite the statute to fix that—we can reinterpret the mental state element of

"knowingly" already present in the statute to apply to the "true threat" act and then

instruct trial courts to ensure that the jury instructions reflect this interpretation of

the statute. That is the best constitutional reading of this statute, and that's what

counts.

I therefore agree with the majority's conclusion that we must reverse due to

the erroneous jury instructions in this case, which failed to ensure that the State

proved that the defendant acted with at least recklessness before convicting him of

---

(1985), which considered "a challenge to a federal statute prohibiting certain actions with respect to food stamps. The statute's use of 'knowingly' could be read only to modify 'uses, transfers, acquires, alters, or possesses' or it could be read also to modify 'in any manner not authorized by [the statute].' Noting that neither interpretation posed constitutional problems, the Court held the scienter requirement applied to both elements by invoking the background principle set forth in *Morissette*. In addition, the Court was concerned with the broader reading which would 'criminalize a broad range of apparently innocent conduct.'" *Id.* at 70-71 (alteration in original) (citation omitted) (quoting *Liparota*, 471 U.S. at 426).

harassment based on his true threats. But I disagree with the majority's reasoning,

because it seems to interpret both *Counterman* and RCW 9A.46.020 incorrectly.

I respectfully concur.

_____
Gordon McCloud, J.